## The Blodgett & Davis Lumber Company (a corporation) v. Richard G. Peters and Finley Morrison.

*Waters and water-courses—Riparian rights—Boundary line.*

1. Complainant and defendants own adjoining parcels of land bordering upon the waters of Green Bay, which is a part of the waters of Lake Michigan, and navigable for all classes of vessels. Both parties own and are operating saw-mills, and have constructed wharves to the deep water of the bay, upon which to pile and from which to ship their lumber. The question in dispute in this case relates to the division line of their respective holdings, under the waters of the bay, in deciding which the Court adopt the Massachusetts rule, which is defined as follows:

   a—To measure the whole extent of the ancient bank or line of the cove or bay, and compute how many rods, yards, or feet each riparian owner upon such line has.

   b—To divide the newly-formed line into as many equal portions as those contained in the shore line, and then draw straight lines from the point at which the proprietors respectively bounded on the old to the points thus determined as the points of division on the newly-formed line.

2. This rule may require modification under particular circumstances in order to secure equal justice, and, in ascertaining the shore line or margin of the water, a general line ought to be taken, and not the actual length of the line on that margin, if it happens to be elongated by deep indentations or sharp projections, so that that line shall embrace the general available line of the shore.

3. The object to be kept in view in cases of this kind is to secure to each proprietor access to navigable water, and an equal share of the dockage line at navigable water in proportion to his share on the original shore line of the bay.

Appeal from Menominee. (Stone, J.) Argued April 9, 1891. Decided October 9, 1891.

Bill to determine boundary line between adjoining

riparian proprietors. Complainant appeals. Decree reversed and case remanded. The facts are stated in the opinion.

*Sawyer & Waite,* for complainant, contended:

1. The right of the riparian proprietor, even before it has been in any manner exercised by reclaiming or improving the premises, —the right itself to reclaim, improve, or occupy,—is a property right vested in him, recognized and protected in the law as property; citing *Brisbine v. Railroad Co.*, 23 Minn. 114; *Carli v. Railway Co.*, 28 Id. 373; *Yates v. Milwaukee*, 10 Wall. 497; *Bell v. Gough*, 23 N. J. Law, 624; *Delaplaine v. Railway Co.*, 42 Wis. 214.

2. The barest strip of upland, though wholly valueless and useless in itself, justifies the owner in the exercise and enjoyment of the privileges of riparian proprietorship to the fullest extent, and any person who may acquire from the riparian owner his right to improve and occupy said premises may always have access to them by means of navigable water, a common highway; citing *Hanford v. Railroad Co.*, 43 Minn. 104; Gould, Waters, §§ 149-153.

3. In the case of *Wonson v. Wonson*, 14 Allen, 83, the method contended for by complainant is distinguished and adopted in a case similar to this, and Mr. Justice Gray says that "the ordinary mode    *    *    *    of applying the general principles stated at the beginning of this opinion, to the division of flats in a cove, is to take the whole length of the upland at high-water mark, ascertain each owner's proportion, and give him the same proportion on the low-water line, and in the same order, and then draw the side lines straight from each proprietor's lines at high water to his corresponding point at low water;" citing *Ashby v. Railroad Co.*, 5 Metc. 370; *Walker v. Railroad Co.*, 3 Cush. 22, 23.

4. Rights in water in no way depend upon the side lines upon the land; citing *Clark v. Campau*, 19 Mich. 325; and a riparian owner has the right to dock out far enough to meet the demands of navigation upon the waters adjacent to which he owns; citing Gould, Waters, §§ 180, 181; *Lincoln v. Davis*, 53 Mich. 375; *Jones v. Lee*, 77 Id. 35.

5. When the shore curves or bends, two objects are to be kept in view, namely, to give to each proprietor a fair share of the land, and to secure to him convenient access to the water from all parts of his land, by giving him a share of the outward line proportioned to the shore of the line of high-water

mark, or original shore owned by him. In such case the general rule is to measure the whole extent of the orignal shore line, then divide the new line into parts apportioned upon the holdings upon the original shore line, in the same order, and give to each owner the portion of the new line based upon his proportion of the original shore line; citing Gould, Waters, §§ 162–165; *Batchelder v. Keniston*, 51 N. H. 496; *Deerfield v. Arms*, 17 Pick. 41; *Gray v. Deluce*, 5 Cush. 9; *Rust v. Mill Corporation*, 6 Pick. 168; *Sparhawk v. Bullard*, 1 Metc. 95; *Jones v. Lee*, 77 Mich. 40.

*B. J. Brown*, for defendants, contended for the rule adopted by the court below, and commented upon the cases cited by complainant's counsel.

*Uhl & Crane*, of counsel for complainant, in reply, contended:

1. The court below arbitrarily determined the boundary line between the respective parties, upon the simple proof that the surveyor, who was sworn as a witness in the case, had drawn a line, and designated it as an "intermediate line," which he had no right to do; citing *Stewart v. Carleton*, 31 Mich. 270; *Cronin v. Gore*, 38 Id. 381; *Gregory v. Knight*, 50 Id. 61; *O'Brien v. Cavanaugh*, 61 Id. 368; *Fisher v. Dowling*, 66 Id. 370.

2. The jurisdiction to issue a mandatory injunction is exercised with extreme caution, and is confined to cases where the courts of law are unable to afford adequate redress, or where the injury cannot be compensated in damages; citing 1 High. Inj. § 2.

3. The waters of the bay should have been divided so as to give to the complainant at the line of navigability a width proportional to that which it had at the original shore line; citing *Rust v. Mill Corporation*, 6 Pick. 158; *Deerfield v. Arms*, 17 Id. 41; *Gray v. Deluce*, 5 Cush. 9; *Wonson v. Wonson*, 14 Allen, 71; *Johnston v. Jones*, 1 Black, 209; *Watson v. Horne*, 64 N. H. 416; *Clark v. Campau*, 19 Mich. 325.

4. The defendants intended to do the complainant an irreparable injury by excluding it from a portion of its docks, and should have been permanently enjoined from inflicting such injury; citing *White v. Forbes*, Walk. Ch. 112; *Middleton v. Booming Co.*, 27 Mich. 533; *Manufacturing Co. v. Railway Co.*, 64 Id. 114.

5. A littoral proprietor has a right to the water frontage belong-

ing by nature to his land, although the only practical advantage of it may consist in the access thereby afforded him to the water for the purpose of using the right of navigation; citing *Clark v. Campau*, 19 Mich. 328; *Yates v. Milwaukee*, 10 Wall. 497; and the rights of such a proprietor to the lands covered by water are the same as those of a riparian owner of lands bordering upon navigable streams within the State; citing *Lincoln v. Davis*, 53 Mich. 375.

6. The common boundary line between the parties is to be determined by extending a line from the boundary at the shore perpendicular to the center line of Green Bay; citing *Rice v. Ruddiman*, 10 Mich. 125; *Lorman v. Benson*, 8 Id. 18; *Clark v. Campau*, 19 Id. 328; *Gas Light Co. v. Industrial Works*, 28 Id. 182.

CHAMPLIN, C. J. The complainant is the owner of the following described parcel of land situated in the county of Menominee, in the State of Michigan, viz:

" Commencing at a point on the section line between sections thirty-four (34) and thirty-five (35), in township thirty-two (32) north, of range number twenty-seven (27) west, sixty-four (64) rods north of the quarter-section corner on said line; running thence east to the bay shore; thence northerly, along the line of said bay shore, to the section line between sections thirty-five (35) and twenty-six (26); thence west, along said section line, to the north-west corner of said section thirty-five (35); thence south, along the section line between said sections thirty-four (34) and thirty-five (35), to the place of beginning; together with all the riparian rights thereunto belonging or in any wise appertaining."

The defendants are the owners and in possession of the following described lands and premises, adjoining those of the complainant on the south, viz.:

" Commencing at a point on the line between sections thirty-four (34) and thirty-five (35), in township thirty-two (32) north, of range twenty-seven (27) west, 208.86 feet south of the quarter-section corner on said line; thence north, along said line, to a point sixty-four (64) rods north of said quarter-section corner; thence east to the bay shore; thence south, along the line of. said bay shore, to the north line of the property conveyed to A.

Spies by the Coleman Lumber Company, by deed dated
May 15, 1885; thence north, eighty-four degrees and
thirty-two minutes west, about four chains, to the place
of beginning; together with all the riparian rights there-
unto belonging or in any wise appertaining."

The lands border upon the waters of Green Bay, and
the question in dispute relates to the division line of the
respective holdings under the waters of the bay. Green
Bay is part of the waters of Lake Michigan, and is
navigable for all classes of vessels. The general course
of the center line of the bay is, according to the United
States survey, north 31 degrees 30 minutes east. The
shore of the bay consists alternately of headlands and
bays or coves, of greater and lesser dimensions. The
map on following page shows the original shore of the bay,
according to the United States government survey.

The land of complainant is shaded with horizontal
lines, and the land of defendants with diagonal lines.
There is a headland jutting out into the bay, marked on
the map as "Point 2." Both parties own and are
operating saw-mills, and have constructed wharves to the
deep water of the bay, upon which to pile and from
which to ship their lumber. The saw-mill of complainant
is built about 500 feet easterly from Point 2, and it has
constructed docks from this in a south-easterly direction
a distance of nearly 700 feet, and at the end of such
docks the water is from 12 to 15 feet in depth. The
defendants have also erected a mill in the bay in front
of their premises 500 feet from the shore line, and have
constructed docks which extend in an easterly direction
about 1,000 feet from the shore line, where the depth of
water is from 12 to 15 feet. They have driven piles with
the intention of still further extending their docks, and
for booming logs, and, if perminted to do so, the lines
of their docks will cross those of complainant, and pre-

Map showing the original shore line, from north line of section 26 to mouth of Menominee river.

vent access to the south side of complainant's docks, and cut off the land lying between such docks and the land of complainant from the privileges of navigable water. This bill is filed to prevent the execution of such work, and to settle the boundaries between the parties.

The defendants claim in their answer that the boundary line between the respective parties extends into the waters of Green Bay at right angles to the section line between sections 34 and 35 to the center of the most usual ship canal of the Green Bay.

The cause was heard upon the pleadings and proofs, and the court decreed as follows:

"The common boundary between the said lands and premises of the complainant and the said lands and premises of the defendants in the waters, and land lying under the waters, of the Green Bay, of Lake Michigan, within the limits of this decree mentioned, to be as follows: Commencing at a point where a line extended east from a point on the section line between sections thirty-four and thirty-five (34 and 35), in township thirty-two (32) north, of range twenty-seven (27) west, sixty-four (64) rods north of the quarter-section corner on said line, intersects said shore; running thence north, seventy-nine (79) degrees and eight (8) minutes east, one hundred and nineteen (119) feet; thence south, eighty-eight (88) degrees and forty-eight (48) minutes east, two hundred and twenty-nine and four-teenth (229 4-10) feet; thence south, eighty-two (82) degrees and three (3) minutes east, two hundred and twenty-nine and four-teenths (229 4-10) feet; thence south, seventy-six (76) degrees and fifty-two (52) minutes east, three hundred and forty (340) feet; thence south, eighty-two (82) degrees and twenty-nine (29) minutes east, seven hundred and thirty-six and eight-tenths (736 8-10) feet.

"And it is further ordered, adjudged, and decreed that said complainant, within six months from and after the date of this decree, do remove all piles, pilings, docks, and all other obstructions whatever by it erected or maintained on the said lands and premises of the defendants in the water, or on the lands under the water, of Green Bay aforesaid, south of the common boundary line

between the same and the said lands and premises of said complainant, as herein defined and established.

"And it is further ordered, adjudged, and decreed that the said defendants recover of the said complainant their costs incurred in this suit to be taxed, and that the said defendants have execution therefor."

It appears from the proofs that this line was arrived at by dividing the shore line from Poplar Point to the mouth of the Menominee river, into two distinct coves; the headlands of the northern cove being indicated by Poplar Point and Point 2 on the map, and the southern cove, by Point 2 and the intersection of the river with the bay. The surveyor, by a series of measurements and surveys, apportioned the distance upon the base line, drawn from the headland at Poplar Point to the mouth of the river, which the owners of the north cove would have in proportion to the shore line owned by them, and upon the map prepared by him had delineated the division line between the complainant's land and the owner next north of it by course and distance. He also made similar calculations and apportionments between those owning the shore of the south cove. Before the proofs were finally closed, the defendants introduced a map upon which was delineated the division line between complainant and its neighbor on the north, as before stated.

Section 35, as will be seen by a reference to the map, is fractional. The part lying north of the east and west quarter line is lot one, and the part lying south of such line is lot two, by the government survey. The surveyor who made the map last referred to drew right lines, one from the south-east corner of lot two to the point where the quarter line intersects the shore line of the bay, and the other from the north-east corner of lot one to the same point. He then projected a line from this point into the bay, dividing the angle made by the intersection of these two lines, and called it a "Medium Line."

Those two lines, running from the corners of lots one
and two, did not follow the shore of the bay, but in
some places ran across the headlands, and in some places
across the water. The line from the corner of lot one
left the headland at Point 2 wholly upon the bay side.
It entirely ignored its existence as a fact of any import-
ance, although it had been used in forming the north
cove and the division line of complainant's water-rights
on the north. The surveyor then projected what he
styled a "medium line," from the point where the eighth
line of the section, produced east, intersected the shore
line, into the bay, which he stated to be a medium line
between the north boundary of complainant's water-rights
and the medium line projected from the quarter post.
He then drew another medium line between these last-
named lines, starting it at the point on the shore where
the south boundary of complainant's land touched such
shore, and this he called the "division line upon the
basis of least availability," and this line the court adopted
in its decree. This line cannot be correct. The north
line from which this medium line is calculated was based
upon the full length of the shore of the north cove, and
is the line of greatest availability for that cove, but this
rule is ignored in getting the medium line on the south.

The object to be kept in view in cases of this kind is
to secure to each proprietor access to navigable water,
and an equal share of the dockage line at navigable water
in proportion to his share on the original shore line of
the bay. The lands bordering upon Green Bay derive
the greater part of their value from the benefit of the
public easement for landing-places, docks, or wharves in
the vicinity of manufacturing establishments, and this is
more particularly essential to mill-owners and manufact-
urers of lumber. Upon consideration of the authorities
cited, we think the rule adopted by Massachusetts will,

in cases like this, secure a nearer measure of justice than those adopted by the courts of any other state. We cannot deal with Green Bay as we could with the rivers in this State, where the lines are to be drawn at right angles to the thread of the stream. The rules laid down for the boundaries of owners of land bordering upon the ocean and great inland seas are more proper for the disposition of the case before us. The rule early defined in Massachusetts is:

1. To measure the whole extent of the ancient bank or line of the cove or bay, and compute how many rods, yards, or feet each riparian owner upon such line has.
2. To divide the newly-formed line into as many equal portions as those contained in the shore line, and then draw straight lines from the point at which the proprietors respectively bounded on the old to the points thus determined as the points of division on the newly-formed line.

It is freely admitted that this rule may require modification under particular circumstances in order to secure equal justice, and that, in ascertaining the shore line or margin of the water, a general line ought to be taken, and not the actual length of the line on that margin, if it happens to be elongated by deep indentations or sharp projections, so that the line shall embrace the general available line of the shore. This is exactly what the meanders run by the United States government do. The lines are run straight, disregarding indentations and projections which are not available for any general useful purpose. The shore line in this case is a meander line of the government survey, and we have by that survey the available line, not elongated by deep indentations or long projections. The headline at Point 2 is too important to be disregarded in tracing the shore line. It is nearly or quite 1,000 feet in length, and 400 feet in width. The United States government recognized it as of

sufficient importance to be included in its meander line and computation of quantity of land in lot one, and it is available for beneficial use and enjoyment, and valuable for manufacturing purposes or a town site. The difficulty is greatest where the shores are irregular.

In the case before us. the waters to be dealt with may be considered a cove from station 6 to station 12, map A, complainant's exhibits. There has been no survey made of the line of navigable water between these two points, which must be done before a final decree can be made. We suppose, however, that such a line will fall within a right line uniting the headlands of the cove as hereinafter described. Based upon this assumption, the proper rule to be applied is that laid down in *Wonson v. Wonson*, 14 Allen, 71, and in following this rule we direct the following method to be observed, namely:

1. Turn right angles to the shore lines from stations 5 and 6, and 6 and 7, at 6, on the east side thereof. Bisect the angle thus made, and produce a line from the point of intersection to navigable water, say to water 15 feet in depth that is navigable.

2. Turn right angles to the shore lines from stations 11 and 12, and 12 and 13, on the east side thereof, at 12. Bisect the angle formed by these lines, and produce a line from the point of intersection to navigable water 15 feet in depth.

The points thus reached upon these lines may be considered the headlands of the cove, between which draw a line upon the general course of navigable water of the depth of 15 feet, and divide this line of navigable water into as many parts as there are feet on the shore line between stations 6 and 12, and give to the complainant and defendants their proportionate share, according to their ownership of the shore line, and divide their proprietorship by straight lines running from the shore to

the line of navigability.  The map on page 503 will show the points referred to above.

The decree of the circuit court will be reversed, without costs to either party.  The case will be remanded to the court below to take further proof to be made of the general line of navigable water 15 feet in depth, as indicated above, and proceed to decree in accordance with the method above described.

We do not think this is a case for imposing costs on either party in this Court, or in the court below.

MORSE, McGRATH, and LONG, JJ., concurred.  GRANT, J., did not sit.