Northern Pine Land Co. vs. Bigelow and another.

NORTHERN PINE LAND COMPANY, Respondent, vs. BIGELOW and another, Appellants.

*October 26, 1892 — January 31, 1893.*

*Riparian owners: Right to build docks, etc.: Boundaries, how determined: Landlord and tenant.*

1. To determine the boundaries within which the riparian owners on a cove or bay of one of the great lakes may build docks, etc., from their respective shores to the line of navigable water, the general rule is to measure the whole shore line of the cove or bay and the line of navigable water in front of the same, and to apportion the latter line among the owners according to the length of their respective holdings on the shore line, drawing straight lines between the corresponding points of division on the two lines.

2. In measuring the shore line, the actual shore and not the meander line of the government survey should be followed. But where there are deep indentations or sharp projections in the shore, its general trend only should be followed; and so, also, in the measurement of the navigable water line.

3. The points between which the line of navigable water is to be measured should be determined by lines bisecting the angles made by the shore line at the headlands at each side of the cove or bay, and produced from such headlands to the line of navigable water.

4. An oral agreement between one riparian owner and the lessees of the adjoining owner, by which it was assumed that a certain line was the division line between them on the waters of the cove or bay, is not binding, as to such line, upon said adjoining owner.

ORTON, J., dissents.

Northern Pine Land Co. vs. Bigelow and another.

APPEAL from the Circuit Court for *Bayfield* County.

The complaint alleges, in effect, that the plaintiff is the owner in fee of a strip of land of about 1,200 feet frontage on Chequamegon bay, on Lake Superior, and being between said bay and the Chicago, St. Paul, Minneapolis & Omaha Railroad Company, and bounded on the northeast by the section line between sections 5 and 6, and on the southwest by a line parallel to it, all being in Washburn, Bayfield county, Wis.; that the defendants are the owners in fee of a similar strip of land, joining it on the northeast, and having a frontage on said bay of about 1,200 feet, and being between said bay and said railroad, and bounded on the west by said section line, and on the east by a line parallel to it; that the plaintiff and defendants each have and operate large and expensive mills on their respective parcels of land, and each has constructed, and now maintains, a dock extending from their respective parcels of land into the waters of said bay, to the navigable portion thereof,— that is to say, where the same is sixteen feet in depth,— in aid of navigation, for the purpose of storing thereon, and shipping therefrom by water, the lumber manufactured by said mills respectively; that the directions of said docks, so projecting into the water, are shown by the maps annexed; that said mills are respectively situated on the indentation of said bay, about one mile in depth, and having a shore line of about nine miles in length, the curvature of the shore of said indentation being in general slight and regular, as shown by the map in evidence; that said lands of the respective parties are indispensable to their respective mills, and are valuable chiefly because they border on the waters of said bay, and afford piling, storage, shipping, boomage, and dockage facilities for said sawmills; that the defendants are encroaching on the water frontage of the plaintiff, and upon its riparian rights. Judgment is demanded fixing the riparian boundary line between said

parcels of land, from the shore to navigable water in front thereof. The answer consists of admissions, denials, and counter allegations.

At the close of the trial the court found, as matters of fact, in effect, that the allegations of the complaint are all true; that in 1886 Rood & Maxwell entered into the possession of the lands of the plaintiff under a ten-year lease from the plaintiff, and built the sawmill and docks now situated thereon in 1887; that the defendants claimed that the boundary line between their property and the plaintiff's was said section line extended into the lake; that in January, 1887, Rood & Maxwell, desiring to get 240 feet of the frontage east of said section line, so that they could have room to locate their mill, agreed with the defendants that in consideration of their allowing the defendants to run their logging railroad through said land, the said Rood & Maxwell should have the water privilege so desired, to extend from the said section line at the shore into the lake 1,000 feet; that in pursuance of said agreement defendants drove a row of piles on said line out a distance of 1,000 feet, and for which Rood & Maxwell agreed to pay one half the expense; that the line on which said piles were so driven is marked on the map " Defendants' Line;" that the plaintiff's agent at Washburn was, by one of the defendants, informed of such agreement; that the defendants built their docks without consulting the plaintiff; that the town-site company of whom the defendants purchased the property where said docks were built had informed the defendants that the boundary line ran with the section line; that before the commencement of this action Rood & Maxwell assigned their interest in said lease to the Northern National Bank, by chattel mortgage, and the bank sold the same to Cook, Griggs & Boutin, and they transferred the same to the plaintiff; that Exhibit B, attached, gives the general contour of the bay; that Exhibit X, attached, is a map

made by the agreement of the parties under the direction of the court, and shows the meander line of the government survey of the shore of that portion of the bay in question, and designates the same by the letters, A, B, C, and also the line of navigable water in front thereof, and designates the same by the letters, D, E, F, and, for the purposes of the decision, considers the waters between the two lines as " a cove; " and said Map X also gives the situation of the lands of the respective parties to the bay and to each other, and the general condition and situation of the land and water, as referred to in the opinion.

And as conclusions of law the court found, in effect, that the boundary line between the respective parties, so far as their riparian rights are concerned, is as follows: Beginning at the point where the section line between said sections intersects the meander line of the waters of the bay; from thence south, 39 degrees and 28 minutes east, 2,472.3 feet, as indicated on Map X by line B E; that the dock of the defendants encroaches on the riparian rights of the plaintiff; that the said verbal agreement between Rood & Maxwell and the defendants is void, and not binding on the plaintiff; that the plaintiff is entitled to judgment in accordance with this finding and the agreement of the parties fixing the boundary line between them; and for the removal of so much of defendants' dock as encroaches on the plaintiff's riparian rights, but without damages or costs, except one half the clerk's fees and state tax. From the judgment entered thereon the defendants appeal.

For the appellants there were briefs by *Tomkins & Merrill*, and oral argument by *W. M. Tomkins.* They contended, *inter alia*, that the shore in question cannot properly be said to be within the limits of a cove. The curve of the shore is long and gradual, and the rule should be that the side lines of each owner be extended to the nearest point on the line of navigability, giving to each the water

Northern Pine Land Co. vs. Bigelow and another.

line *in front of* his own land. *Aborn v. Smith*, 12 R. I. 370; *Emerson v. Taylor*, 9 Me. 42; 23 Am. Dec. 531; *Porter v. Sullivan*, 7 Gray, 443. If the division line is run as contended for by plaintiff, it will pass diagonally across what would ordinarily be regarded as the water in front of defendant's land. Such a result does not commend itself as either reasonable or just. See *Thornton v. Grant*, 10 R. I. 489; *Manchester v. Point St. I. Works*, 13 id. 355.

*J. J. Miles*, for the respondent, argued, among other things, that the shore in question is a cove within the decisions of *Gray v. Deluce*, 5 Cush. 9; *Wonson v. Wonson*, 14 Allen, 71; *Blodgett & D. L. Co. v. Peters*, 87 Mich. 498; *Stone v. Boston S. & I. Co.* 14 Allen, 230. He cited, also, Gould, Waters, secs. 153, 164, note 5; *Stockham v. Browning*, 18 N. J. Eq. 390, 396.

CASSODAY, J. It appears from the map, Exhibit X, constituting a part of the findings herein, as mentioned in the foregoing statement, that the point of intersection of the line between sections 5 and 6 and the meander line of the government survey of the shore of the bay is thereon designated as B; that 3,745 feet northeasterly from the said point, B, along said meander line, is a headland projecting slightly into the bay, and designated thereon as C; that 9,768 feet southwesterly from the said point B, along said meander line, is another headland, projecting slightly into the bay, and designated thereon as A; that the said meander line, A B C, is 13,513 feet in length, and, although irregular, is nevertheless quite similar to the arc of a circle. It further appears from said map and said findings that navigable water, sixteen feet deep, is reached at a point designated thereon as F, 850 feet from the said point A, on a line south, 77 degrees east, and which line is about perpendicular to the trend of the shore at A in both directions,— that is to say, an equal division of the angle made

Northern Pine Land Co. vs. Bigelow and another.

The above map is taken from Exhibit X, with a few omissions for convenience in reproduction. The line A B C represents the meander line of the shore, and the dotted line D E F the line of navigable water sixteen feet deep.— REP.

by the change of the shore at that point; that navigable
water, sixteen feet deep, is reached at a point designated
thereon as D, 920 feet from the said point C, on a line
south, 26 degrees east, and which line bears the same rela-
tion to the shore at C that the line A F does to the shore
at A; that the line of navigable water, sixteen feet deep,
from D to F, is 12,206 feet in length, and is irregular in its
course, and almost constantly varying in distance from said
meander shore line, A B C; that said line of navigable
water, at the point designated thereon as E, is 8,823 feet
from said F, and 3,383 from said D, along said navigable
water line, and is 2,472 feet distant from the said point B,
which line B E constitutes the division line between the
parties hereto, as found by the trial court, and mentioned
in the foregoing statement; that the point E was ascer-
tained by the following proportion, to wit: The whole
length of the meander shore line, A B C, is to the whole
length of the navigable water line, D E F, as the length
of the meander shore line, B C, is to the length of the
navigable water line, D E. Such is the division line be-
tween these adjoining riparian owners from the shore to
the navigable water of the bay, and the method by which
the same was ascertained by the trial court. The correct-
ness of such division line is challenged by counsel for the
appellants. The great extent of the state's frontage upon
the waters of Lakes Superior and Michigan, and other
waters, makes the question presented of great importance.

In *Cohn v. Wausau Boom Co.* 47 Wis. 322, it is said by
RYAN, C. J., speaking for the whole court, that " it is settled
in this state that a riparian owner on navigable water may
construct in front of his land, in shoal water, proper
wharves, piers, and booms in aid of navigation, at his peril
of obstructing it, far enough to reach actually navigable
water. This is properly a riparian right resting on title to
the bank, and not upon title to the soil under the water.

It is a private right, however, resting, in the absence of prohibition, upon a passive or implied license by the public, is subordinate to the public use, and may be regulated or prohibited by law." Such is undoubtedly the settled rule of law in this state. *J. S. Keator Lumber Co. v. St. Croix Boom Corp.* 72 Wis. 82. This being so, it necessarily follows that the parties to this action, as riparian owners, have the right, in aid of navigation, to construct, from their respective shores to the line of navigable water, docks, wharves, piers, etc.; and hence the important question for determination is the location of the lines upon which such riparian owners, respectively, may of right thus reach such navigable water. Where the general course of the shore is a straight line, or approximates a straight line, and the division lines between coterminous riparian owners are at right angles with the shore, there would seem to be no difficulty in reaching the navigable water by straight parallel lines; but where there is much diversity and irregularity in the shore line the difficulty of making a just division is increased, and the adherence to a universal rule rendered impossible. Where the general course of the shore line is much curved, either outwardly or inwardly, the boundary lines within which the riparian owner is required to confine himself in reaching the navigable water must necessarily be either divergent or convergent, according as the navigable water line is longer or shorter than the shore line.

The general rule early adopted in Massachusetts, and since adhered to, was borrowed from the civil law, and is to the effect: (1) To measure the whole extent of the ancient bank or line of the river, and compute how many rods, yards, or feet each riparian proprietor owned on the river line; (2) to divide the newly-formed bank or river line into as many equal parts as such shore line contained rods, yards, or feet, and then to appropriate to each proprietor as many

of such parts of such new river line as he owned rods, yards, or feet on the old; and then, to complete the division, lines are to be drawn from the points at which the proprietors, respectively, bounded on the old, to the points thus determined as the points of division on the newly-formed, shore. *Deerfield v. Arms*, 17 Pick. 45, 46. In stating the rule, SHAW, C. J., there indicates that it may perhaps require modification under particular circumstances, as, for instance, where such lines happen to be elongated by deep indentations or sharp projections, and then the *general line* ought to be taken, instead of the actual line. "In such case it should be reduced, by an equitable and judicious estimate, to the general available line of the land upon the river." *Rust v. Boston Mill Corp.* 6 Pick. 158; *Sparhawk v. Bullard*, 1 Met. 95; *Trustees of Hopkins Acad. v. Dickinson*, 9 Cush. 552; *Wonson v. Wonson*, 14 Allen, 84, 85. That rule is expressly sanctioned by the highest courts of the United States, New York, and Michigan. *Johnston v. Jones*, 1 Black, 222, 223; *S. C.* 18 How. 150; *O'Donnell v. Kelsey*, 10 N. Y. 415; *Blodgett & D. L. Co. v. Peters*, 87 Mich. 506, 507. In the case last cited the rule stated was applied to the division between coterminous riparian owners of lands fronting on the waters of Green Bay in Lake Michigan, and hence that case is peculiarly applicable to the case at bar. As there said by CHAMPLIN, C. J., speaking for the court: "The object to be kept in view in cases of this kind is to secure to each proprietor access to navigable water and an equal share of the dockage line at navigable water in proportion to his share on the original shore line of the bay. . . . We cannot deal with Green Bay as we would with the rivers in this state, where the lines are to be drawn at right angles to the thread of the stream. The rules laid down for the boundaries of owners of land bordering upon the ocean and great inland seas are more proper for the disposition of the case before us."

Northern Pine Land Co. vs. Bigelow and another.

In the case at bar the trial court apparently attempted to follow the general rule indicated, but erroneously, as we think, took the meander line, as located by the government survey, as the shore line of the bay. This court has frequently held, in effect, that such meander lines, so located, are not to be considered in determining the actual boundaries of lots sold by the government as bounded upon rivers or other navigable waters, nor for determining the respective rights of coterminous riparian owners of lands fronting thereon. *Menasha W. W. Co. v. Lawson*, 70 Wis. 600; *Whitney v. Detroit L. Co.* 78 Wis. 249, and cases cited in the opinions; *Everson v. Waseca*, 44 Minn. 248; *Cragin v. Powell*, 128 U. S. 691; *Jefferies v. East Omaha L. Co.* 134 U. S. 178. Besides, here there appears to be more or less deep indentations and sharp projections, and hence the modified rule mentioned should be applied, and the general trend of the actual shore line from one of the headlands mentioned, to the other, should be taken as the line to be divided into feet in the manner adopted by the trial court; and since there are similar indentations and projections in the navigable water line, D F, the general trend of the actual navigable water line should be taken as the line to be divided into as many parts as there shall be feet in such actual shore line, and each of the said riparian owners will be entitled to as many of such corresponding parts as there may be feet in such shore line on his land. The points D and F, respectively, are to be ascertained in substantially the manner adopted by the trial court.

The verbal agreement between Rood & Maxwell and the defendants in respect to the line between them, we do not think was binding upon the plaintiff. It assumed what was then supposed by them to be the true line, but did not fix it as the true line, nor agree upon it as such. There was at that time no dispute or controversy about the division line. The land belonged to the plaintiff, and Root & Max-

Northern Pine Land Co. vs. Bigelow and another.

well, as such mere lessees, had no authority to sell or give away the same, nor to transfer or destroy the plaintiff's riparian rights or its true boundary line, even by writing, much less by mere verbal agreement or mere revocable license; and hence the trial court properly found such verbal agreement to be void.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for further proceedings and further evidence, and for judgment fixing and establishing the division line between the plaintiff and the defendants from the shore to the navigable water as indicated in the opinion, and in accordance with the written stipulation between the parties.

ORTON, J.  I most respectfully dissent from the opinion of the court in this case.  It seems to me that this court has adopted the rule, for the division of the premises, of the circuit court.  Preliminary to the only and real question in the case, it may be said that Chequamegon bay is a cove or bay of Lake Superior.  "It is a sheet of water about ten miles in length, varying in width from six miles to three, and navigable the entire length and breadth thereof; it being a part of Lake Superior, separated from the open lake by a long island, a strip of land ten miles in length, with an average width of about sixty rods, said bay being connected with the open lake by two channels, each of which is two or three miles in width, and being a part of Lake Superior."  Maps have been exhibited, showing the contour and trend of the shore line of the respective premises, the curvature of which is not very great.  They also show a somewhat curved and irregular line, fixed by soundings and survey, as the line of navigability out in the bay, or where the water is sixteen feet in depth.  On each of the premises are mills, and the docks built out to said line of navigability are indispensable to said mills.  These

docks were built according to the will of each proprietor, without regard to any fixed, legal, or scientific line; and the dock of the defendant appears to be tending, at least, to the waters opposite the premises of the plaintiff. The said mill sites are situated on an indentation of the bay about one mile in depth, and having a shore line of about nine miles in length, the curvature of the shore of said indentation being, in general, slight and regular. By what rule or theory should the true boundary or division line between these riparian proprietors be ascertained or fixed? was the question before the learned circuit court, and is the question here on this appeal. The rule adopted by the circuit court is admitted to have been the rule approved in *Wonson v. Wonson*, 14 Allen, 71, and in *Blodgett & D. L. Co. v. Peters*, 87 Mich. 498. This last case is more like the present one than those relating to flats in front of the shore line, for it relates to Green Bay as a part of Lake Michigan. But the principle is the same, whether applied to alluvial deposits, the current of rivers, or the line of navigability in bays in front of the land. It is surprising how many different rules have been adopted to give to each shore proprietor his proper share in the waters or riparian rights in front of his land. It would not seem to make any difference whether the shore line is about a cove or bay, if it has considerable curvature or irregularity, as in this case. The line of navigability, also, has a somewhat similar irregularity. The general rule adopted in the above cases, and, by the circuit court in this case, is stated by the learned counsel of the respondent as follows: " Where the shore approximates to a straight line, the flats (or waters inside the line of navigability) are divided up among the coterminous proprietors by lines perpendicular to the general .course of the shore; but when it curves or bends, two objects are kept in view, namely, to give to each proprietor a fair share of the outward line proportionate to the share

of the shore line owned by him." The rule is more fully stated, and in closer application to this case, in *Blodgett & D. L. Co. v. Peters, supra*, in effect as follows: "To determine the division lines between separate holdings in the shallow waters of a navigable bay, of owners of land bordering thereon and located on a cove, from the extreme points of the cove draw lines at right angles to the shore or meander lines meeting at such points, bisect the angles formed by such lines, and extend the bisecting lines to navigable water in depth. The points thus reached will be the headlands of the cove. Connect the headlands by a right line. Divide this line into as many equal parts as there are feet in the shore line between the two points of the cove, the shore line being divided into parts of a foot each. The proprietorship of the landowners in the inclosed waters is shown by straight lines connecting the corresponding points of division, this rule being based on the assumption that the bisecting lines will reach navigable waters before they intersect." It will be seen that this problem is complicated. The tendency of the bisecting lines is towards their intersection. If the navigable line (which appears to be accepted as being direct or straight) should be irregular, and at some places much further from the shore line, or if, by bars forming, it should be extended much further from the shore line, the bisecting lines might intersect before reaching navigable water. This rule would seem to depend upon the curvature of the shore line of the cove or bay. It might answer to fix the division line between two proprietors on that indentation; but may not the lines so established conflict with those to be established by the same rule, of other adjacent proprietors, whose shore line is less curved, or straighter? It may be that I do not sufficiently understand this rule, as to its practical effect in these particulars. The court says in the opinion in the above case: " It is freely admitted that this

rule may require modification, under particular circumstances, in order to secure equal justice." And it is said in *Wonson v. Wonson*, 14 Allen, 71: "There may doubtless be other cases, the peculiar circumstances of which may require a modification of, or departure from, the general rule." This rule, however, seems to have been adopted in many cases which are collated in notes to secs. 163, 164 of Gould on Waters. I much prefer the rule laid down in *Thornton v. Grant*, 10 R. I. 477. That case involved the rights of two proprietors on a navigable river in the waters in front of their respective lands to the channel, and is closely analogous to a similar controversy between the owners of the shore, in respect to their riparian rights in the waters in front of their lands out to navigable water. In that case the shore was very irregular, by a projecting rock and a deep curve beyond. "The rule is this: Draw a line along the main channel in the direction of the general course of the current in front of the two estates, and from the line so drawn, and at right angles with it, draw a line to meet the original division line on the shore." The court says that "this rule is not unlike the rule adopted in *Gray v. Deluce*, 5 Cush. 9." And it is said by the court in *Wonson v. Wonson*, 14 Allen, 71 (while at the same time adopting the above complicated rule), that "*the simple and natural way* of ascertaining what flats outside of the base line are to be considered as belonging to, and to be divided among, the estates within the cove, is to draw side lines at each end of the base line, and at right angles with it, to low-water mark," citing *Gray v. Deluce, supra*. No good reason is perceived why the court did not adopt that "simple and natural way," and one certain in all cases, instead of adopting a rule subject to modification under different circumstances. This simple rule has been adopted in *Stockham v. Browning*, 18 N. J. Eq. 391; *Rush v. Jackson*, 24 Cal. 308; *Arden v. Kermit*, Anth.

N. P. 112; *Jones v. Lee*, 77 Mich. 35; *Bond v. Wool*, 107 N. C. 139; *Aborn v. Smith*, 12 R. I. 370; *Manchester v. Point St. I. Works*, 13 R. I. 355; *Brown v. Goddard*, 13 R. I. 76; *Emerson v. Taylor*, 9 Me. 42, 23 Am. Dec. 531. This rule is applicable to all similar cases, without regard to curved or irregular shore lines or lines of navigability, and it is so simple as not to require a diagram to understand and apply it. In application to this case the rule is: Draw a line along, and in the general direction of, the ascertained line of navigability in front of the estates; and from the line so drawn, and at right angles with it, draw a line to meet the section line between sections 5 and 6, at the point where it comes to the water line of the bay.