STUART *v.* GREANYEA.

1. FISH—FISHING RIGHTS—NATURE.

The right to fish in the waters of the Great Lakes, like the right to navigate, is a public right, which extends to all portions of the lakes.

2. NAVIGABLE WATERS—FISHING RIGHTS — STATUTES — CONSTRUCTION.

In Act No. 122, Pub. Acts 1905, giving shore owners in Arenac and Iosco counties an exclusive fishing right in front of their lands extending two miles out, it was not the legislative intent to limit the right to those owners whose frontage is situated opposite the open waters of Saginaw Bay, thus denying it to a portion of the owners of frontage upon coves, but the intent was to confine the right of each landholder to the limits of pre-existing riparian rights, and to the rules applicable to the determination of such limits, except as to the distance the right extends into the bay.

3. SAME—RIPARIAN RIGHTS—EXTENT.

Though riparian rights in the Great Lakes do not extend beyond access to navigable water, every shore owner has such right of access, subject to the general right of navigation.

4. SAME—WHARF RIGHTS.

It is the general rule that frontage on navigable waters for wharfage is proportionate to the extent of shore frontage.

5. SAME—FISHING RIGHTS—DETERMINATION—COVE FRONTAGE.

Under Act No. 122, Pub. Acts 1905, in marking the boundaries of the rights of the owners of frontage upon coves, a base

line should be drawn between the headlands of the cove, to which all boundary lines will converge; and in case there be frontage from which straight lines cannot be drawn intersecting the base line, secondary base lines should be drawn, between inner headlands, if any, if not to the center of the cove; and the several base lines should then be divided proportionately to the shore frontage of the owners.

Appeal from Arenac; Sharpe, J. Submitted June 11, 1908. (Docket No. 69.) Decided September 10, 1908.

Bill by John Stuart against Joseph Greanyea and others to enjoin fishing in certain waters. From a decree for complainant, defendants appeal. Reversed, and remanded.

*W. C. Cook,* for complainant.

*S. E. Hayes (De Vere Hall* and *E. V. Ingersoll,* of counsel), for defendants.

HOOKER, J. The parties to this suit own adjoining premises, bordering Saginaw Bay. The complainant's bill was filed to enjoin defendants from fishing with set nets within two miles of the shore at a place alleged to be in front of complainant's land, and in which he had riparian rights, and defendants had not. The defendants have appealed.

Apparently it is claimed by counsel for both parties that fishing in the Great Lakes was in common until the enactment of Act No. 94, Laws 1869. That was a statute which prohibited the placing in waters where fish are taken by the legal owner or occupant of adjacent lands any ship ballast, stone, sand, coal cinder, ashes, log slabs, decayed wood, bark, sawdust, or obstruction or filth of any other description, or placing or driving any pound net piles or stakes or any other piles or stakes or posts, or building any platforms or pier or any species of seines or continuous trap nets to the extent of the breadth of such legal owner or occupant's lands so far as the channel banks of

rivers, and to one mile from the beach or shore, at low-
water mark of the lakes, straits, inlets, and bays or said
waters fronting such owners' or occupants' lands, and
subjecting any boat owner or captain to punishment who
should wilfully run into or molest any pound net, etc.
In 1905 an act was passed prohibiting any person, for the
purpose of fishing, from driving any stakes or setting or
placing any nets in the waters of Saginaw Bay contiguous
or adjacent to the shores of Arenac and Iosco counties for

a distance of two miles from said shores, unless such per-
son is the lawful owner or occupant of the shore frontage
opposite to which said stakes are driven or nets set or
placed, or unless such person shall have a license to do so
from said owner or occupant.   Section 2 made the act
penal, and also provided a civil liability, damages to be
recovered by such owner, occupant, or licensee in an action
of trespass.   See Act No. 122, Pub. Acts 1905.

Assuming that the law is constitutional and gives ex-
clusive rights—questions not before us on this record—it
is only necessary to decide where the line separating rights
under it should be located in Wigwam Bay, for there is
nothing indicating a necessity that it be settled for the

entire two miles, unless it shall be found necessary to do so in order to determine its location in Wigwam Bay. We think it is not. We attach a map to this opinion.

The lands of the parties are upon sections 35 and 36, and the boundary line between them is at or near the center of what is called "Wigwam Dredge Cut," shown on the map by a heavy black line, a short distance east of the section line between the sections named. This cut was made for the purpose of floating logs, and it is our understanding that it extends from Rifle river to Wigwam Bay, and is a short cut for bringing logs from the river to the mills on that bay, and that fish are in the habit of going through the cut, on their way to the river, during the spawning season. Wigwam Bay, so called, has an area of something over two miles. It is shallow, and at each end there is a pronounced cove, owing to the existence of two promontories or capes that extend toward the east and southwest, respectively. The easterly one is called "Green's Point," the westerly "Pine River Point." The testimony convinces us that a bar opposite or immediately in front of the entrance of the cut deflects the main channel from the cut toward Green's Point, and that the fish as a rule follow this channel. The defendants, before the filing of the bill, have, at times, set their nets across the entire front of the complainant's lands, but we understand that they now claim only the right to extend their nets from the center of Wigwam dredge cut at the outlet, south six degrees east, into the bay, for a distance of two miles, and that their nets were so set at the time of the hearing. On the other hand, the complainant contends that the line should be ascertained by finding the center line of Saginaw Bay, and running a line at right angles therewith to the boundary line between the parties' lands, or, if that is not the rule, such line should be run at right angles with the line of navigable water; i. e., the line separating the blue and green water where the depth is about 16 feet, some distance outside of Wigwam Bay. If defendants' contention is correct, viz., that they have

an exclusive right of fishing, the entire width of their land for two miles out, it is obvious that every other proprietor cannot have a similar right, for the reason that the opening of the bay is not wide enough to accommodate all. Moreover, if "opposite" is held to mean strictly "in front of," any attempt to extend straight lines for two miles would make confusion through the intersection of lines. If, on the other hand, complainant's theory is to be adopted, all abutting premises lying east of defendant's land will be cut off from such right by Green's Point. We understand it to be conceded by both parties that, previous to the enactment of the statute of 1869 referred to, the riparian rights of abutting proprietors did not include an exclusive right to set nets in the waters included in what are ordinarily denominated "riparian waters," and that riparian rights, whatever they were, did not necessarily extend two miles or one mile from shore. We have often said that the right to fish, like the right to navigate, was a public right, and that it extended to all portions of the lakes. *Sterling* v. *Jackson*, 69 Mich. 509. See *People* v. *Silberwood*, 110 Mich. 103 (32 L. R. A. 694); *People* v. *Warner*, 116 Mich. 228; *Brown* v. *Parker*, 127 Mich. 390, which recognize the rule. See, also, *Ainsworth* v. *Fishing Club*, 153 Mich. 186. It would seem to follow that the right asserted here by each party is no more than a statutory right; and that we understand to be their claim. Whether it is open to the criticism of being class legislation, and whether the legislature may grant exclusive rights of fishery over any portion of the public waters, are questions that we will not pass upon in this case, as we cannot properly do so upon this record.

Assuming it to be a valid statutory right, we must ascertain the meaning of the statute. An easy way to dispose of it would be to adopt defendants' theory that it was intended to give every abutter an exclusive right to fish on a strip as wide as his lot extending out two miles, and, if the shore were straight and there were no head-

lands, no objection could be made to it. But it is not straight and shores seldom are; and counsel have not been able to suggest any rule of division that seems to offer a fairer solution than the general rule for the ascertainment of access to navigable water. This rule would give every landowner on the bay a right of access to a two-mile area, but the shore of Wigwam Bay is much longer than the distance between the headlands at the entrance of the bay, and, as the lines of all must pass between the headlands in order to extend to the two-mile limit, one of two things necessarily follows : (1) That lands whose frontage collectively equals the distance between headlands only can have such rights under the statute; or (2) such lines must all converge. If we were to adopt the former theory, we should then be perplexed to ascertain which of the several parcels were to be denied the right. If the latter, we are confronted with the question whether any of the shore line between headlands should be omitted from the operation of the statute, and, if so, how far this omission should extend. The difficulties of the former and the palpable injustice of an arbitrary selection of favored lands leads us to discard it. We cannot believe that such was the legislative intent, and we are therefore forced to the conclusion that the real intent was to confine the right of each landholder to the limits of pre-existing riparian rights, and to the rules applicable to the determination of such limits, except as to the distance the right extends into the bay, riparian rights in the Great Lakes not extending beyond access to navigable water, whereas these rights may. As we understand these rights and rules, every shore owner has a right of access to navigable water, subject to the general right of navigation. If we assume that the line of navigable water is outside of Wigwam Bay, all lines must converge to the distance between headlands. The corners of the abutting parcels furnish starting points for each parcel. Therefore we should take an imaginary line from Pine River Point to Green's Point as a base line, to which the various lines must converge. A glance at the map is

sufficient to show that there are lands from which a straight line could not possibly intersect the base line, and it is therefore necessary to establish another base line. Were there headland on both sides of the inner coves, we should perhaps take those as termini for such inner lines, but there are not, and we therefore establish the center of the shore line as the point to which lines from Pine River Point and Green's Point shall converge, and meet. Lines from the shore will run to those inner base lines, striking the same at points proportionately the same distance apart as on the shore line, and the process will be repeated in running the lines between the base lines. This seems to us to be the only practicable method of making a fair division.

We should consider whether this disposition of the question has the sanction of authority. We deem it an elementary rule that all shore owners on the lakes have a right of access to navigable water, if it is feasible to give it to them, and that it is the general rule that frontage on navigable waters for wharfage is proportionate to the extent of shore frontage. For this State the question was settled in *Blodgett & Davis Lumber Co.* v. *Peters*, 87 Mich. 498, and the method to be adopted in ordinary cases is there pointed out. But that case, recognizing the difficulty of an inflexible rule, gives prominence to the fact that a fair apportionment is the object in view, and asserts the propriety of modifying the rule, to that end, where circumstances seem to require it. Something like the modification in this case was resorted to in that case. See, also, Gould on Waters (3d Ed.), §§ 149, 164, 165. Under this plan, the rights of these parties can be easily ascertained. Manifestly, a line from the center of the shore line to the center of the outer base line can be easily fixed. To ascertain the boundary line, it is only necessary to ascertain the distance from the center of the shore line to the point on the shore where the lands of the parties meet, and a proportionate distance on the base line. A straight line between them will be the boundary. It is illustrated upon the map. As shown there, the nets represented by

the dotted line appear to be wholly within the defendants' allotment, but we cannot be sure that our measurements are accurate.

We cannot ascertain from the proofs in the case the length of either base line or the center of the shore line. Therefore we find it necessary to remand the cause, with directions to the trial court to take the necessary proof and make such changes in the decree as may be necessary to make it comply with the requirements of this opinion. Costs of this court will abide the event.

GRANT, C. J., and MOORE, CARPENTER, and MCALVAY, JJ., concurred.