MUMAUGH v McCARLEY

VANTOL v PINEHURST SHORES

PHELPS v BALDWIN TOWNSHIP BOARD

Docket Nos. 172301, 172507, 172522. Submitted September 5, 1996, at Grand Rapids. Decided November 1, 1996, at 9:20 A.M.

In actions consolidated for bench trial in the Iosco Circuit Court and brought by Carol J. Mumaugh and Muriel F. Robinson against Michael A. and Debra W. McCarley, by Freeda VanTol against Pinehurst Shores, and by H. John Phelps, III, against the Baldwin Township Board and others, the court, J. Richard Ernst J., redetermined the lot lines and frontage on Lake Huron of parcels in the Pinehurst Shores Subdivision of Baldwin Township and a parcel outside the subdivision but also in the township. The redetermination was made necessary by discrepancies between the property lines shown in the original plat of the subdivision and the legal descriptions in the deeds under which the subdivision lots were conveyed and by reliction caused by the permanent recession of the lake. Phelps, whose parcel outside the subdivision had its lake frontage reduced from approximately ninety feet to approximately ten feet, VanTol, whose subdivision lot was determined by the court to be nonriparian, and the McCarleys appealed. The appeals were consolidated.

The Court of Appeals *held*:

1. The reduction in Phelps' lake frontage violates prohibitions under US Const, Am V and Const 1963, art 10, § 2 against governmental taking of private property without just compensation. The trial court's order reducing Phelps' lake frontage must be reversed. On remand, fairness should be the key consideration in apportioning the relicted land, with each owner to receive a portion of the new lakeshore that is proportionate to the owner's portion of the old lakeshore.

2. The trial court erred in determining that the VanTol lot was nonriparian. A 1936 deed, a 1938 surveyor's plat, and subsequent deeds referring to the 1938 plat indicated that the lot was riparian. The trial court's order finding the VanTol lot to be nonriparian must be reversed.

3. The trial court did not abuse its discretion in allowing a surveyor to testify that his proposed assessor's plat of the properties in question was "fair." As an expert witness, the surveyor was permitted under MRE 702 to testify in the form of an opinion regarding the rationale behind the proposed assessor's plat. MRE 704 provides that testimony in the form of an opinion is not objectionable because it embraces an issue to be decided by the trier of fact.

Reversed and remanded.

1. WATERS AND WATERCOURSES — RIPARIAN RIGHTS — CONSTITUTIONAL LAW — TAKINGS CLAUSE.

Land bordering water is riparian land; riparian rights involve property rights with which the government may not interfere without paying just compensation (US Const, Am V; Const 1963, art 10, § 2).

2. WATERS AND WATERCOURSES — RELICTION — JUDICIAL APPORTIONMENT.

Fairness is the key consideration when a court apportions land among owners of shorefront property following a reliction; each owner should receive a portion of the new shorefront that is proportionate to the owner's portion of the old shorefront.

3. BOUNDARIES — OFFICIAL PLAT.

The boundaries of land that is disposed of by reference to an official plat are controlled by the boundary lines shown on the plat; the purchaser has the right to rely on the reference to the plat even though it may be erroneous.

*Hardy, Lewis and Page* (by *Thomas Hardy, David M. Davis,* and *Karl F. Newman*), for H. John Phelps, III.

*James W. Shotwell,* for Michael A. and Debra W. McCarley and Freeda VanTol.

*Jerry L. Schmidt,* for Baldwin Township Board.

Before: DOCTOROFF, C.J., and HOOD and BANDSTRA, JJ.

DOCTOROFF, C.J. These appeals arising from cases that were consolidated for trial concern an area on the western shore of Lake Huron where the lake has

receded, exposing approximately two hundred feet of new land. The parties contest the boundary lines of the newly exposed area. Defendants Michael and Debra McCarley and plaintiff H. John Phelps, III, appeal as of right from the trial court's disposition of the property in issue. Petitioner Freeda VanTol appeals as of right from the trial court's decision that the VanTol property[1] was nonriparian. We reverse and remand.

The principal area in question in this case is a subdivision known as Pinehurst Shores, which contains ten lots on the western shore of Lake Huron in Baldwin Township. The property of plaintiff Phelps is directly south of the Pinehurst Shores subdivision. The VanTol property, which is the lot directly north of the Phelps property, is the southernmost lot in the subdivision and will be referred to as Lot 1.[2] Since the

---

[1] The property referred to here as the "VanTol" property was originally owned by Michael and Debra McCarley. This lawsuit began when discrepancies in the lot lines were found during a survey conducted at the McCarleys' request in anticipation of a sale to VanTol.

[2] Although the VanTol property was the first lot in the subdivision and was originally labeled Lot 1, the assessor's proposed plat renumbered the properties, naming the Phelps property Lot 1, the VanTol property Lot 2, and labeling each lot one number higher than its original designation, and increasing the total number of lots to eleven. The trial court eventually decided to exclude the Phelps property from its determination and returned the lots to their original numerical designation. This Court will also use the lots' original numerical designations. Thus, the VanTol property shall remain Lot 1, and each of the ten lots in the subdivision will be numbered in sequence to the north of the VanTol property. The Phelps property will have no numerical designation, because it is not a part of the Pinehurst subdivision.

time when the subdivision was last platted by a surveyor in 1938, each lot gained approximately two hundred feet of land through recession of Lake Huron. However, the shape of the VanTol property, as set forth in the 1938 plat, was widest at its westernmost point and increasingly narrows as it angles toward the shores of Lake Huron. With the relicted land,[3] an extension of the previous VanTol property lines would cross inland, leaving the property without riparian access. Conversely, extension of the property lines for Lot 10, the northernmost lot in the Pinehurst subdivision, would result in additional lakefront footage for the parcel. For clarification, a diagram of the land is attached as Appendix A.

Surveyor Richard Miller was hired by defendants Michael and Debra McCarley to survey the property for a potential sale to the VanTols. Miller discovered discrepancies between the subdivision's property lines as recorded in the 1938 plat and the legal descriptions of the property in the underlying deeds. At the request of Baldwin Township, Miller thus drew up a proposed assessor's plat to resolve the discrepancies and to properly apportion the newly relicted land. Although Phelps' property was not part of the Pinehurst subdivision, Miller included the Phelps lot in the proposed plat, and recommended a reduction in Phelps' lakefront footage. At trial, Miller testified that Phelps' property became involved because the lot lines of the first three Pinehurst lots, if extended over

---

[3] Relicted land is made by the withdrawal of the waters by which it was previously covered. Black's Law Dictionary, 4th ed, p 1455.

the relicted land to the shore of Lake Huron, would converge on Phelps' property.

In attempting to distribute the newly relicted land, the trial court granted Phelps' request to be excluded from the disposition, because his property was not within the subdivision. The trial court then found that the VanTol property was nonriparian and thus had no right to have the extension of its property lines altered in order to retain its access to Lake Huron. The trial court also ordered that the lines of Lots 1, 2, and 3 be extended over the relicted land to the shore of Lake Huron. However, because of the southern slant of these property lines, the order had the effect of crossing the lines into Phelps' unplatted property. Although the trial court purportedly determined that Phelps' property should not be included in the Pinehurst plat, the order had the effect of reducing Phelps' shoreline from approximately ninety feet to approximately ten feet. In accordance with a proposed plat prepared by Richard Miller, the owners of Lots 5 through 10 agreed amongst themselves to extend their existing lot lines across the relicted land to the shore of Lake Huron. This agreement, which was accepted by the trial court, had the effect of retaining or expanding the amount of lakefront footage for the owners of Lots 5 through 10.

On appeal, Phelps argues that the trial court conducted an unconstitutional taking in depriving him of approximately eighty feet of lake frontage. We agree. Additionally, we agree with VanTol that the trial court

erred in finding that the VanTol property was non-riparian.

I

On January 12, 1994, the trial court entered an order finding that the VanTol property was nonriparian and that Lots 1, 2, and 3 were to be extended over the relicted land to the shore of Lake Huron, despite the fact that the lines crossed into Phelps' unplatted property to the south of the subdivision. The trial court's order contained an assessor's plat reflecting the court's order. In extending the lot lines, the trial court expressly stated that "the property owned by Plaintiff-Phelps . . . is hereby excluded from the plat." Despite the fact that the trial court purported to exclude Phelps' property, the plat ordered by the trial court had the effect of severely reducing the amount of shoreline property owned by Phelps. The deprivation of approximately eighty feet of lake frontage constituted an unconstitutional taking of Phelps' property.

Land bordering water is riparian land. *Thies v Howland*, 424 Mich 282, 287-288, n 2; 380 NW2d 463 (1985). Riparian rights involve property rights that, if interfered with by the government, requires the payment of just compensation. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 195; 521 NW2d 499 (1994). Both the Fifth Amendment of the United States Constitution and art 10, § 2 of the Michigan Constitution prohibit governmental taking of private property without just compensation. *Bevan v Brandon Twp*, 438 Mich 385, 389-390; 475 NW2d 37 (1991),

cert den 502 US 1060; 112 S Ct 941; 117 L Ed 2d 111
(1992). In this case, the trial court deprived Phelps of
approximately eighty-five percent of his lake frontage.
This order constituted a taking of Phelps' property in
violation of the United States and Michigan Constitu-
tions. Accordingly, we reverse the trial court's order
and remand this case to the trial court for a new dis-
position of the relicted land.

Upon remand, in apportioning the relicted land, the
key consideration should be fairness. *Stuart v Grean-
yea*, 154 Mich 132, 138; 117 NW 655 (1908). Thus,
each riparian owner should receive a portion of the
new lakeshore that is proportionate to the owner's
prior lakefront ownership. 78 Am Jur 2d, Waters,
§ 422, p 869; *Stuart, supra*. In this regard, it was error
for the trial court to accept the agreement between
the owners of Lots 5 through 10, because the agree-
ment failed to apportion any of the loss in lakefront
footage to those lot owners. In determining proper
apportionment of the relicted land, fairness dictates
that each parcel of affected land should have its
lakefront reduced in proportion to the amount of
lakefront originally held in each lot. Upon remand,
the trial court should determine the natural bounda-
ries of the lakefront property affected by the relic-
tion[4] and apportion the new land proportionately
among all affected landowners. The entire stretch of
land within natural boundaries and affected by the

---

[4] In *Blodgett & Davis Lumber Co v Peters*, 87 Mich 498; 49 NW 917
(1891), the Court similarly determined the natural boundaries and propor-
tionately determined the lines of ownership.

reliction likely includes riparian owners not presently parties to this suit.[5] During oral argument, plaintiff Phelps indicated a willingness to join these individuals as parties to this litigation upon remand. Or, in the alternative, the trial court has the power to join any other necessary parties to the litigation. MCR 2.205(B). Once all potentially affected property owners have become parties to this lawsuit, the trial court should reapportion the area affected by the reliction, with the interest of fairness being the overriding factor in the disposition of the land. *Stuart, supra.*

## II

Next, VanTol challenges the trial court's determination that her property, Lot 1 in the Pinehurst subdivision, is nonriparian. We agree with VanTol and reverse the trial court's decision.

The oddly shaped lot[6] currently owned by VanTol was previously sold in 1936. The deed for this transaction indicated that the lot was riparian, as the metes and bounds description stated that the northern boundary was to run "to the shore of Lake Huron, then north 18 degrees east 50 feet." Similarly, in a 1938 surveyor's plat, the property now owned by VanTol was renamed Lot 1, and the plat indicated that the east boundary of the lot was the meander line.

---

[5] According to plaintiff Phelps, the natural boundaries of the relicted beach extend from the northern edge of the Pinehurst subdivision to the southern edge of the subdivision to the south of Phelps' property.

[6] As noted above, the lot is widest at its westernmost point and narrows as it reaches east toward Lake Huron.

When a plat shows a lot is bounded by the meander line of a lake, the grant of land is to the water's edge. *Gregory v LaFaive*, 172 Mich App 354, 361; 431 NW2d 511 (1988). Thus, the 1938 plat indicated that the property was riparian.

Although there was testimony that the 1938 plat was erroneous, the trial court erred in relying on that testimony in deciding that the VanTol property was nonriparian. The VanTol property was conveyed with reference to the 1938 surveyor's plat, which named the property Lot 1 and indicated that the lot was riparian. Where land is disposed of by reference to an official plat, the boundary lines shown on the plat control. *Gregory, supra* at 359. Therefore, purchasers of such parcels have the right to rely on the reference to the plat though it may be erroneous. *Id.* Because both the legal description in the original 1936 conveyance and the 1938 surveyor's plat indicated that Lot 1 was riparian, and because each subsequent conveyance of the parcel referred to the 1938 plat, we find that the trial court's determination that the VanTol property was nonriparian was clearly erroneous. See *Arco Industries Corp v American Motorists Ins Co*, 448 Mich 395, 410; 531 NW2d 168 (1995). Accordingly, we reverse the trial court's finding that the VanTol property was nonriparian.

III

We next consider plaintiff Phelps' argument that the trial court erred in permitting an expert witness

to testify regarding his belief that the proposed assessor's plat was "fair." We disagree.

Surveyor Richard Miller, who devised a proposed plat for the affected area, testified at trial in this case. Over objection, Miller was allowed to state at trial, "I would conclude that [the proposed plat] would seem to be the fairest disposition of the problem." As an expert witness, Miller's challenged testimony was admissible under MRE 702 and MRE 704. MRE 702 provides:

> If the court determines that recognized scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

MRE 704 provides:

> Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

As an expert witness, Miller was permitted by MRE 702 to testify in the form of an opinion regarding the rationale behind his proposed assessor's plat. Miller prefaced his opinion by stating that the proposed plat would affect only the lots that had been subjected to reliction and that no single landowner would be unduly harmed. In addition, under MRE 704, Miller was allowed to state his opinion that the proposed solution was fair, despite the fact that fairness was an issue for the trier of fact to determine. Accordingly,

the trial court's decision to allow the opinion testimony of Miller was not an abuse of discretion.

Reversed and remanded.

## Appendix A

This diagram is included in this opinion only to provide clarity with respect to the general layout of the land in question and the parcels contained therein. The boundary lines in the diagram are not precise, nor are they to scale.