THOMAS, Appellant, vs. ASHLAND, SISKIWIT & IRON RIVER LOGGING RAILWAY COMPANY, Respondent.

*September 9—September 27, 1904.*

*Navigable waters: Line of navigability: Access over shallows: Rights of shore owners: Coves: Apportionment and delimitation.*

1. Each owner of shore line on a navigable lake is entitled, as against other owners, to his proportion of the line bounding navigable water for contact with navigation, and to a direct course over intervening shallows to construct piers or other structures connecting the shore with such navigable line.
2. Where, as in the case of a cove, such proportional division of the navigable water line cannot be made by lines drawn at right

angles to the shore, the whole cove is to be treated as a unit of the shore line by drawing such perpendicular lines from its two boundary points or headlands to the line of navigability, and then apportioning the whole intervening boundary line of navigable water to the whole shore line of the cove between such headlands, and by drawing straight lines from the *termini* of each so apportioned share of the navigable water line to the respective *termini* of the corresponding shore line pertaining to each owner.

3. The dominant rule in all such cases is that each shore owner must have his due proportion of the line bounding navigability and a course of access to it from the shore exclusive of every other owner; and all rules for apportionment or division are subject to such modification as may be necessary to accomplish substantially this result.

4. The method of apportionment and delimitation by straight lines, above indicated, should not be varied or departed from unless such variation or departure is necessary to substantial equality between the owners. Thus, a theory as to the limits of the cove by which no apportionment of the line of navigability to all the shore owners by straight lines is possible, should not be adopted in presence of any other feasible theory.

APPEAL from a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

The plaintiff and defendant were coterminous owners of land fronting upon the head of Chequamegon Bay, at the extreme westerly end thereof. The first of the accompanying diagrams, which is a modification of defendant's Exhibit B, discloses the general shore line at this place, and also, by a dotted line, the limit of sixteen-foot navigable water. Plaintiff's premises are lots 3 and 4 on said plan, and lots 5, 6, and 1 are the defendant's. The premises involved are upon a shallow bay or cove, a distance slightly more than a mile from the sixteen-foot depth of water. Defendant had constructed a pier or wharf approximately 3,000 feet long, and running nearly parallel to its shore line, the terminus of which was almost exactly east of the point of division between the plaintiff's and defendant's shore line. Plaintiff

brought this action, alleging interruption of his access to navigable water, and praying abatement of this pier.

The testimony of several surveyors was taken, and the location was shown of various lines drawn to apportion the navigable water line to the shore owners of this indentation or cove. Such lines differ according to the location of the limits of the cove. The several points discussed as possible limits are marked on the plat as A, B, C, D, and E, and the corresponding points on the navigable water line are indicated respectively by A', B', C', and D'. The surveyors attempted to apportion space upon the navigable water line proportionately to the shore line, first, according to the theory that the cove extended from A to B; secondly, from A to D; thirdly, from A to E; fourthly, from C to D; and fifthly, from C to E. From such evidence it appeared that upon none of these

theories did the wharf invade plaintiff's line, except upon the theory that the cove was bounded by the points A and E. The engineers further testified that, if that theory were adopted, it would be impossible, by reason of the conformation of the shore, to give proportional access from all the shore line to the navigable water line. It also was made to appear that, if the cove were deemed to extend from A to B, the north line limiting defendant's access to navigability would run along plaintiff's shore for a distance of several hundred feet, and entirely prevent access therefrom to water at all.

The second diagram is a section of the first, and shows the courses of dotted lines dividing plaintiff's and defendant's rights over the shallows according as the different points above named may be adopted as the headlands or boundaries of the cove. The letters on each of these lines indicate the headlands from which it results.

The court did not find specifically in favor of any of these lines, but contented itself with finding as a fact that the wharf occasioned plaintiff no damage, and, as a conclusion of law, that it was wholly within the lines of defendant's rights of access, and outside of plaintiff's lines. As a result of this finding, judgment was entered dismissing the complaint, from which plaintiff appeals.

For the appellant there was a brief by *Tomkins, Tomkins & Garvin,* and oral argument by *W. M. Tomkins.*

For the respondent there was a brief signed by *Lamoreux & Shea,* and oral argument by *W. F. Shea.*

DODGE, J. Appellant's argument is apparently addressed not so much to anything which the court has adjudged as to the scheme of boundary lines contended for by certain surveyor witnesses. There is, however, nothing to indicate that the court adopted their views. Indeed, the court has made no finding of fact as to the location of lines separating plaintiff's rights of access to navigable water from those of defendant. The sole point adjudged is that defendant's pier, as now constructed, does not invade plaintiff's riparian rights. This may be true upon any of several theories as to where are the proper limits of this cove, or as to the proper manner of extending lines from shore boundaries to line of navigability.

The rules of law governing delimitation of rights of shore owners to use of shallows intervening between them and practically navigable water—especially in case of a cove or irregularity in the shore, or marked variation of the course of the shore line from the line of navigability—have recently been so clearly expressed in the now leading case of *Northern P. L. Co. v. Bigelow,* 84 Wis. 166, 54 N. W. 496, that extended research for authority or discussion of the question would be work of supererogation. The rule there stated is to the effect that every shore owner, as against other owners, is entitled to his proportion of the line bounding navigable water for

contact with navigation, and to a direct course over intervening shallows to construct piers or other structures connecting the shore with such navigable line; that, when the irregularities or curvature of the shore are such that lines cannot be drawn at right angles to the shore to accomplish this, then the whole cove is to be treated as a unit of the shore line by drawing such perpendicular lines from its two boundary points or headlands to the line of navigability, and then apportioning the whole intervening boundary line of navigable water to the whole shore line of the cove between such headlands, and by drawing straight lines from the two termini of each so apportioned share of navigable water line to the respective termini of the corresponding shore line pertaining to each owner. But the dominant rule is that each must have his due proportion of the line bounding navigability and a course of access to it.from the shore exclusive of every other owner, and that all rules for apportionment or division are subject to such modification as may be necessary to accomplish substantially this result. *Northern P. L. Co. v. Bigelow, supra; Blodgett & D. L. Co. v. Peters,* 87 Mich. 498, 49 N. W. 917; *Rust v. Boston M. Corp.* 6 Pick. 158, 169; *Deerfield v. Arms,* 17 Pick. 41; *Walker v. B. & M. R. R.* 3 Cush. 1, 24; *Tappan v. Boston W. P. Co.* 157 Mass. 24, 29, 31 N. E. 703; *Elgin v. Beckwith,* 119 Ill. 367, 10 N. E. 558; 3 Farnham, Waters, 2471 *et seq.*

The surveyors expressed opinions in favor of the points A and B on accompanying first plat as the limits of the cove; conceding, however, that the angle of the shore line is more acute at either D or E than at B, and that the practical parallelism of navigability to shore line extends inward to C on the south and to D on the north, so that the cove, as indicated by a greater extent of shallow water, is more properly limited by the points C and D. It might well be conceded, as appellant contends, that the A to B theory of the cove limits could not be sustained by the court, for an apportion-

ment upon that theory would result in cutting off several hundred feet of plaintiff's shore line from any access at all to water, navigable or not, thus infringing the dominant rule above stated. But it appears that he can secure both access to and proportionate frontage on the navigable water by the method prescribed in the *Bigelow Case* if either C and D or C and E are adopted as the cove limits, and that all other shore owners within the cove, so limited, can be protected in similar rights. It also appears without dispute that in either such case the defendant's wharf is wholly outside of the lines connecting plaintiff's shore with the line of navigability. Thus it appears that, unless some other plan is absolutely required by law, plaintiff's riparian rights are not invaded by defendant's structure, and the judgment merely dismissing the complaint is right ultimately, whatever may have been the reasons inducing it.

Some, though not very earnest, contention is made in favor of E and A as cove boundaries, from which would result a division line between plaintiff and defendant on which the wharf does infringe slightly; but to this arrangement there is the objection that no apportionment to all the shore owners is possible by straight lines, hence it is not to be adopted in presence of any other feasible theory.

Appellant also contends that the true cove is limited by the points E and G, but that lines bisecting the shore angle at each of these points would intersect before reaching navigable water, so that no navigable water line would exist for apportionment under the rule of the *Bigelow Case;* hence he argues that a method should be adopted which has sometimes, *ex necessitate,* been applied to shut-in or bottle-shaped coves, where direct lines could not be drawn from all parts of the shore to navigable water. That method is to draw a base line across the entrance or mouth of the cove, apportion that base line proportionately among the shore owners, and then run lines from the termini of each owner's portion of the base line out

to the line of navigability, which is divided proportionately to the respective shares of the base line. *Rust v. Boston M. Corp.* 6 Pick. 158, 168; *Walker v. B. & M. R. R., supra; Wonson v. Wonson,* 14 Allen, 71; *Tappan v. Boston W. P. Co.* 157 Mass. 24, 29, 31 N. E. 703. While in some instances it may be necessary to the protection of riparian owners' rights to depart from the method of apportionment and delimitation prescribed by the *Bigelow Case,* we have no inclination to vary or obscure that rule, unless such variation is necessary to substantial equality. The evidence fails to show any such necessity here. By adopting either C and D, or A and D, or C and E as the limits of the cove, a substantially equitable apportionment can be made by the rule of that case. Besides, there is nothing in the testimony to warrant the view that G can with any propriety be considered a headland or terminus of this cove, while the maps in evidence indicate quite the converse. From them it appears to be the very center or head of the indentation into the shore.

We cannot avoid the conclusion that the record wholly fails to show that the trial court's decision was erroneous.

*By the Court.*—Judgment affirmed.