Roy F. NOSEK and Evelyn M. Nosek, Plaintiffs-Appel-
lants and Cross-Respondents,†

v.

George E. STRYKER and Irene Stryker, Defendants-
Respondents and Cross-Appellants.

Court of Appeals

*No. 80–1598. Submitted on briefs May 28, 1981.—
Decided July 22, 1981.*
(Also reported in 309 N.W.2d 868.)

† Petition to review denied.

634

For the plaintiffs-appellants and cross-respondents the cause was submitted on the brief of *Ruder, Ware, Michler & Forester, S.C.* of Wausau. *Carl L. Ricciardi* and *Stewart L. Etten* of counsel.

For the defendants-respondents and cross-appellants the cause was submitted on the brief of *Eugene C. Daly* of *Foley & Lardner* of Milwaukee.

Before Voss, P.J., Brown and Scott, JJ.

BROWN, J. This case involves a dispute between two neighbors owning adjacent land on the shore of Powers Lake. Each riparian owner claimed that the other's pier encroached upon his waterfront rights. The trial court found the Noseks' pier interfered with the Strykers' riparian rights and was therefore a private nuisance to the Strykers. The trial court ordered the Noseks' pier moved a considerable distance away from its present location. The Noseks appeal, and we affirm.[1]

---

[1] The Strykers cross-appeal from the judgment. They argue the Noseks' claim for relief was frivolous and ask for damages pursuant to sec. 814.025(3)(b), Stats. The Strykers' pleadings did not request such relief. The Strykers further did not file a written motion with the trial court requesting the relief. Neither does the transcript show any evidence of this request having been made in open court. The Strykers claim they sub-

There is no set rule in Wisconsin for establishing the extension of boundaries into a lake between contiguous shoreline properties. Three general methods, however, are evident from Wisconsin case law. In the least complicated situation, where the course of the shore approximates a straight line and the onshore property division lines are at right angles with the shore, the boundaries are determined by simply extending the onshore property division lines into the lake. *Northern Pine Land Co. v. Bigelow*, 84 Wis. 157, 164, 54 N.W. 496, 498 (1893). This method is best illustrated by Diagram 1, which is a portion of Noseks' Exhibit 4, with additions and deletions for illustrative purposes.[2] Lots twenty-one and twenty-two have boundary lines running at a right angle from an approximately straight shoreline. As between these lots, the division can easily be made by extending the onshore division lines.

mitted proposed findings of fact allowing for costs under sec. 814.025, Stats. They argue this should be construed as a request. We have grave doubts as to the logic of their suggestion. Even so, the Strykers did not make the proposed findings of fact part of the appeal record. Rule 809.15(1). Further, there is no evidence of an agreed statement of facts in lieu of the record. Rule 809.15(5). We, therefore, cannot and will not review the issue.

We have no idea whether the request was ever brought to the trial court's attention. The record and the trial court's judgment are silent on the issue. We also do not know whether the Noseks had notice of the request. The Strykers do present, in their appendix, a reproduction of what they claim are the proposed findings of fact and conclusions of law. That is not sufficient. The Strykers had a duty to see that the record was complete, and they could have moved to supplement or correct the record. They failed to do either. The cross-appeal is dismissed.

[2] Authority for altering reproduced exhibits for illustrative purposes is found in *Thomas v. Ashland, Siskiwit & Iron River Logging R.R.*, 122 Wis. 519, 520, 100 N.W. 993, 994 (1904), and *Northern Pine*, 84 Wis. at 162 (1893).

DIAGRAM 1

Often, however, the boundary lines on land are not at right angles with the shore but approach the shore at obtuse or acute angles. In such cases, it is inappropriate to apportion the riparian tract by extending the onshore boundaries. *Jansky v. City of Two Rivers,* 227 Wis. 228, 240, 278 N.W. 527, 532 (1938), referring to *Hathaway v. City of Milwaukee,* 132 Wis. 249, 111 N.W. 570, 112 N.W. 455 (1907). Instead, the division lines should be drawn in a straight line at a right angle to the shoreline without respect to the onshore boundaries. *See Thomas*

*v. Ashland, Siskiwit & Iron River Logging Railway,* 122 Wis. 519, 524, 100 N.W. 993, 994 (1904). Diagram 1 shows lots eighteen and seventeen as Noseks' and Strykers' respectively. The shore approximates a straight line, but the onshore boundaries converge upon the shoreline at something other than right angles. Using method one, the riparian tract would be formed by merely extending the onshore boundaries. Diagram 1 discloses that the apportioned riparian tracts would be from point A to point B, from point C to point D and from point E to point F. Using the second method, right angles are drawn from the shoreline, and the onshore boundaries are not extended. The lines are drawn from points A′ to B′, points C′ to D′ and points E′ to F′.

A third method is used where the shoreline is irregular. In that case, if it is impossible to draw lines at right angles to the shore to accomplish a just apportionment, then the boundary line should be run in such a way as to divide the total navigable waterfront in proportion to the length of the actual shorelines of each owner taken according to the general trend of the shore.[3] *Northern Pine,* 84 Wis. at 164–65, 54 N.W. at 498.

The Noseks argue that this third method is the only one Wisconsin recognizes and that this case must be remanded because the trial court made no findings concerning the line of navigability or the portion of the

[3] This same test is stated another way in *Thomas,* 122 Wis. at at 524, 100 N.W. at 994, as follows:

"[T]he whole cove is to be treated as a unit of the shore line by drawing such perpendicular lines from its two boundary points or headlands to the line of navigability, and then apportioning the whole intervening boundary line of navigable water to the whole shore line of the cove between such headlands, and by drawing straight lines from the two termini of each so apportioned share of navigable water line to the respective termini of the corresponding shore line pertaining to each owner."

shoreline composing the cove.[4] The Noseks misconstrue the cases. This method is only to be applied when the irregularities or curvature of the shore are such that lines cannot be equitably drawn at right angles to the shore. *Thomas*, 122 Wis. 524, 100 N.W. at 994. Diagram 1 shows that although the shoreline is a cove, the shore directly abutting the properties involved is a straight line or approximates a straight line. This impression is borne out by all the exhibits in the record.[5] We conclude the third method is not applicable, and the trial judge did not err by failing to use this method of apportionment.

Although the Noseks proclaim the third method is the only viable one, all of their documentary evidence and most of their testimony advocated the first method, namely, straight extension of the onshore boundaries out onto the lake. This is best illustrated by Diagram 2, which is the Strykers' Exhibit 9.[6]

By extending the lot lines onto the lake, the Noseks contend that half of the Strykers' pier is in their riparian tract. They complain that the Strykers should be forced to move their pier from the Noseks' riparian tract because they have exclusive right to that tract.

---

[4] The third method was used in both *Northern Pine* and *Thomas*. However, both cases involved curved, irregular shorelines which made it inequitable to apportion the tracts any other way. Both cases concerned commercial wharves which required a substantially greater distance to reach the line of navigability. The irregular shoreline and long wharves made it impractical to place the riparian tract boundaries at right angles to the shore.

[5] No finding on this point was made by the trial court. Nevertheless, when the evidence is documentary, the appellate court has the right to interpret such evidence for itself and is not burdened by the lack of findings of the trial court. *Delap v. Institute of America, Inc.*, 31 Wis. 2d 507, 510, 143 N.W.2d 476, 477 (1966).

[6] *See* footnote 2, *supra*.

DIAGRAM 2

- - - - - - - Method 1, suggested by
the Noseks

_____ Method 2, right angle

We have no quarrel with the Noseks' exclusive right to their full riparian tract. As stated in *Thomas,* 122 Wis. at 124, 100 N.W. at 994:

[T]he dominant rule is that each must have his due proportion of the line bounding navigability and a course of access to it from the shore *exclusive of every other owner,* and that all rules for apportionment or division are subject to such modification as may be necessary to accomplish substantially this result. [Emphasis added.]

Each riparian owner is therefore entitled to exclusive possession to the extent necessary to reach navigable water,[7] to have reasonable ingress and egress to navigable water[8] and to have reasonable access for bathing and swimming.[9]

We do quarrel, however, with the Noseks' use of the first method to establish their exclusive riparian tract. The method to be followed depends upon the particular circumstances. It is incumbent upon the courts to avoid an inequitable result. *Rondesvedt v. Running,* 19 Wis. 2d 614, 618, 121 N.W.2d 1, 4 (1963). When onshore boundary lines do not approach the shore at right angles, their straight extension out to the line of navigability necessarily cuts across the shoreline of adjacent properties. Diagram 2 shows that if the Noseks' and the Strykers' lot lines were extended straight out onto the lake, the Noseks' riparian tract would cut squarely in front of the Strykers' house. We anticipate the Noseks would argue, however, that if the second method were used and right angle lines were drawn from the shore, the Strykers' pier would then be located directly in front of the Noseks' house, thus producing the same inequity. We reject that argument.

Exclusive use of the apportioned riparian tract only extends so far as to reach the line of navigability. *Cohn v. Wausau Boom Co.,* 47 Wis. 314, 322, 2 N.W. 546 (1879). Using the right angle approach, the Strykers' pier does protrude out in front of the Noseks' house, as illustrated by Diagram 2. However, the record indicates the line of navigability is four feet. Therefore, the Noseks have no exclusive right beyond that four foot

---

[7] *Northern Pine,* 84 Wis. at 163, 54 N.W. at 598.

[8] *Id.*

[9] *Bino v. City of Hurley,* 273 Wis. 10, 16, 76 N.W.2d 571, 575 (1956).

line of navigability. Diagram 2 shows the Strykers' pier is outside the riparian tract formed by D′, C′, A′ and B′. Therefore, use of the right angle method would not be inequitable to the Noseks.

There is abundant other evidence, found by the trial court, which justifies use of the right angle method. Although the Strykers' property has approximately two hundred feet of lake frontage, most of it is fairly high ground containing considerable shrub and tree cover. Only about fifty or sixty feet of the shoreline is accessible to open lake frontage. In addition, certain exhibits show shallow water surrounding the frontage. The most direct course of access to navigable water is within the first fifty to sixty feet north of the Nosek-Stryker lot line. The trial court found that the lack of water depth all around the shoreline and the large amount of vegetation on the Stryker property indicated that the Strykers had taken the most direct route to navigable water. At the same time, the trial court found that the Noseks' pier could be shifted a considerable distance, as illustrated by our placement of the letter G in Diagram 2. A partial drawing of a pier was placed at letter G, during trial, by a DNR official called as a witness in the case. As noted by the trial court, this placement would have several advantages. First, it places the Noseks' pier in the most direct route to navigable water. Second, the pier would not interfere with either Mr. Spillett, the neighbor on the left, or the Strykers on the right. Third, it would allow the Noseks to shorten their pier, since all they are entitled to is exclusive use of their riparian tract up to the navigational depth line. The trial court correctly noted that simply because the Noseks have 125 feet of shoreline, they are not entitled to 125 feet of length out on the lake. They are only entitled to as much extension as is necessary to reach navigational depth. The trial court also found that the Noseks were

not being deprived of the scenic beauty of Powers Lake by reason of looking at a portion of the Strykers' pier. It correctly noted that boats and piers are an expected sight in a lakefront view.

The trial court's findings are not contrary to the great weight and clear preponderance of the evidence. *Cogswell v. Robertshaw Controls Co.,* 87 Wis. 2d 243, 249, 274 N.W.2d 647, 650 (1979). The findings emphasize why the right angle method is most equitable in this case.

The Noseks fault the trial court's emphasis upon the most direct route to navigational depth. They claim they are entitled to more than just direct access to navigational depth. They believe they are entitled to exclusive control of their riparian tract regardless of which method is used to formulate the tract. We agree with the Noseks as a general proposition since the rule is that each owner is entitled to exclusive possession over his or her own tract. However, that exclusive possession is subject to exceptions which have been specifically recognized by the legislature in sec. 30.13(1), Stats., as follows:

(1) RIGHTS OF RIPARIAN PROPRIETORS. Riparian proprietors may construct wharves or piers in navigable water in aid of navigation without obtaining a permit under s. 30.12, *provided such wharves or piers do not interfere with public rights in navigable waters or with rights of other riparian proprietors,* and subject to any pierhead line which may have been established and to the regulations contained in sub. (2) and in any ordinances enacted pursuant thereto. Except as otherwise expressly provided, any wharf or pier which does not comply with this subsection constitutes an unlawful obstruction of navigable waters. [Emphasis added.]

The trial court found that the Noseks' pier needed to be erected only far enough to reach the nearest point

of navigable water. The trial court had the power to order the movement of the Noseks' pier toward that point. The facts show that the Noseks' pier constituted an unreasonable interference of the Strykers' riparian rights and was therefore a private nuisance.[10] *See Abdella v. Smith*, 34 Wis. 2d 393, 398, 149 N.W.2d 537, 539 (1967). Abatement is a proper means of restraint upon the finding of a private nuisance. *Dolata v. Berthelet Fuel & Supply Co.*, 254 Wis. 194, 200–01, 36 N.W. 2d 97, 100 (1949). Thus, we conclude the trial court's judgment was within the confines of Wisconsin law. We conclude that a court can order a pier to be placed in such a position that it goes to the most direct point of navigable water if the riparian rights of the public or of other owners would not thereby be jeopardized, regardless of the exclusive use rule. The trial court here found that any other placement of the pier would unduly affect either Mr. Spillett or the Strykers. We agree with that assessment and do not find the trial court's order to be contrary to the law.[11]

*By the Court.*—Judgment affirmed; cross-appeal dismissed.

---

[10] Among other facts previously mentioned, not only did the Noseks' pier affect the Strykers' ingress and egress, but also the ingress and egress of their boating friends, which worked to the Strykers' discomfiture. These findings are not against the great weight and clear preponderance of the evidence and provide further support for a finding of private nuisance.

[11] The trial court said that under Wisconsin law, a riparian owner may take *only* the most direct route to navigable water. For the reasons stated in this opinion, the trial court's statement of the prevailing law is error. However, because of the exceptions to the exclusive possession rule and because the factual findings support the inference that exceptions to the exclusive possession rule exist here, the trial court's misstatement is inconsequential.