Dale Manlick and Carrie Manlick,
Plaintiffs-Appellants,

v.

Gilbert Loppnow and Gail Loppnow,
Defendants-Respondents.

Court of Appeals

*No. 2010AP2034. Submitted on briefs May 3, 2011.
—Decided August 2, 2011.*

2011 WI App 132

(Also reported in 804 N.W.2d 712.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Patricia A. Schober* of *Schober, Bostetter & Heiden, S.C.* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *John M. Bruce* and *Thomas J. Marola* of New Berlin.

Before Fine, Kessler and Brennan, JJ.

¶ 1. BRENNAN, J.   This dispute centers upon the riparian rights of two battling lakefront neighbors, Dale and Carrie Manlick and Gilbert and Gail Loppnow, and where they each have a right to place their respective piers and shore stations. On appeal, the Manlicks argue

that the trial court erred in concluding that the coterminous method was the proper method by which to determine the parties' riparian rights. Instead, the Manlicks contend that the question of which method to apply should have gone to the jury. We affirm the trial court.

## BACKGROUND

¶ 2. The Manlicks own lakefront property on Pewaukee Lake immediately south of the lakefront parcel owned by the Loppnows. Both parties have less than thirty feet of lake frontage on a portion of the lake with a curved shoreline.

¶ 3. The Manlicks have traditionally installed their pier and shore station on the north end of their property, next to the Loppnows' property, within parallel lines that extend from the parties' property lines. Prior to 2007, the Loppnows installed their pier and shore station on the north end of their property, away from the Manlicks' property.

¶ 4. In 2006, the Manlicks' boat broke down, and they temporarily replaced it with a pontoon that they docked on the north side of their pier, the side closest to the Loppnows' property, without regard for where the property lines ended. Gilbert Loppnow was upset that the Manlicks did not ask his permission to put the pontoon on the north side of the pier, and he voiced his concern to Dale Manlick, who then moved the pontoon.

¶ 5. In spring 2007, the Loppnows moved their pier and shore station to the south, immediately next to the Manlicks' pier, and south of the Loppnows' property line, if the property lines were extended in a straight line out into the lake. In 2008, the Loppnows purchased a larger shore station, and again placed it immediately next to the Manlicks' pier.

96

¶ 6. In June 2007, the Loppnows sent the Manlicks a letter, purportedly explaining their new pier and shore station placement. The letter stated, in part, that Gilbert Loppnow "discussed our particular configuration with an employee of the water division of the DNR that is responsible for advising homeowners on the legal location of their piers and a local judge who makes decisions on these types of situations." The letter went on to claim that "with the DNR's help we have diagramed exactly what is the legal location for a pier for both your and our lake frontages . . . We do not want to incur unnecessary expenses regarding this issue based on the DNR's clear explanation of the situation." Gilbert Loppnow admitted at trial that he had not spoken with a judge and that the DNR did not advise him on how to configure the parties' piers, but rather provided him with a pamphlet. He also admitted that he moved his pier and shore station to prevent the Manlicks from using the north side of their pier.

¶ 7. In September 2008, the Manlicks filed this suit, alleging trespass and conversion, private nuisance, and property loss through misrepresentation pursuant to Wis. Stat. §§ 895.446 and 943.20 (2009–10)[1] because they believed the location of the Loppnows' pier and shore station since 2007 infringed upon their riparian area. The Loppnows counterclaimed, alleging nuisance and trespass. The crux of the parties' dispute centered on how to determine the boundaries of the parties' riparian areas.

---

[1] The Manlicks' complaint inaccurately stated that its fraudulent misrepresentation claim was pursuant to Wis. Stat. §§ 895.446 and 920.20. The court noted the scrivener's error at trial. All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

¶ 8. The Manlicks' claims were based on their understanding that their riparian area is located directly in front of their property between parallel lines that extend from the property lines at the shore. Using that method to determine their riparian rights, the location of the Loppnows' pier and shore station since spring 2007—south of the Loppnows' property line—infringed upon the Manlicks' riparian rights. The Loppnows' counterclaims were based on their understanding that the parties' riparian boundaries should be angled approximately forty-five degrees south from the property lines under what is commonly known as the coterminous method. Using the coterminous method to determine their riparian rights, the Manlicks' pier was inside the Loppnows' riparian area.

¶ 9. A jury trial on the tort claims commenced on April 13, 2010. At the close of testimony, the Loppnows moved to dismiss the Manlicks' claims on the grounds that the Manlicks had not shown a violation of their riparian rights. The trial court asked the parties to address whether the court or the jury should determine the method by which to define the parties' respective riparian areas.

¶ 10. Following the parties' arguments, the trial court ruled that "the issue of determining the riparian area is either an equitable issue or a matter of law for the [c]ourt to decide." The trial court went on to conclude that the coterminous method advanced by the Loppnows was the most equitable way to define the parties' riparian areas. By determining the parties' respective riparian areas using the coterminous method, the trial court concluded that the Manlicks had not produced any evidence demonstrating that the Loppnows had invaded the Manlicks' riparian area and subsequently dismissed the Manlicks' trespass and conversion and nuisance

claims. The trial court also dismissed the Manlicks' misrepresentation claim, concluding they had presented no evidence that they had been deceived by the Loppnows' admitted-misrepresentations.

¶ 11.  During the jury instruction conference, the Manlicks moved the trial court to reconsider its decision not to send the question of which method to apply to the jury and the trial court's subsequent application of the coterminous method. The trial court denied the motion.

¶ 12.  After the trial court dismissed the Manlicks' claims, the only issues left for the jury to determine were the Loppnows' counterclaims for nuisance and trespass. The jury found that:  (1) a private nuisance did exist, but that the nuisance did not result in significant harm to the Loppnows; and (2) the Manlicks did not trespass on the Loppnows' riparian area. No damages were awarded to either party, as all claims and counterclaims were denied. The Manlicks appeal.

## DISCUSSION

¶ 13.  Owners of lakefront property are "entitled to exclusive possession [of the waterfront] to the extent necessary to reach navigable water, to have reasonable ingress and egress to navigable water and to have reasonable access for bathing and swimming." *Nosek v. Stryker*, 103 Wis. 2d 633, 640, 309 N.W.2d 868 (Ct. App. 1981) (footnotes omitted). These rights, commonly referred to as "riparian rights," extend from a landowner's property line to the line of navigability.[2] *See id.* The

---

[2] The line of navigability, separating the parties' riparian area from navigable waters, is not at issue in this case.

questions at issue in this case are: (1) *how* should the Manlicks' and Loppnows' property lines be extended from the shore to define their respective riparian areas; and (2) *who* should draw the lines—the court or the jury.

¶ 14.  "There is no set rule in Wisconsin for establishing the extension of boundaries into a lake between contiguous shoreline properties." *Borsellino v. Kole*, 168 Wis. 2d 611, 616, 484 N.W.2d 564 (Ct. App. 1992). However, Wisconsin case law sets forth three general methods for determining where riparian boundaries lie. First, "where the course of the shore approximates a straight line and the onshore property division lines are at right angles with the shore, the boundaries are determined by simply extending the onshore property division lines into the lake." *Nosek*, 103 Wis. 2d at 635. Second, if "the boundary lines on land are not at right angles with the shore but approach the shore at obtuse or acute angles . . . the division lines should be drawn in a straight line at a right angle to the shoreline without respect to the onshore boundaries." *Id.* at 636 (internal citations omitted). Third, "where the shoreline is irregular . . . then the boundary line should be run in such a way as to divide the total navigable waterfront in proportion to the length of the actual shorelines of each owner taken according to the general trend of the shore."[3] *Id.* at 637.

¶ 15.  Here, the parties advocate for only two of the three methods. The Manlicks argue that the riparian boundary lines should be extended in a straight line from the parties' property lines to the line of navigabil-

---

[3] *See Nosek v. Stryker*, 103 Wis. 2d 633, 635–38, 309 N.W.2d 868 (Ct. App. 1981) (illustrating each of the three methods).

ity, to wit, method one. The Loppnows argue that the riparian boundary lines should be angled approximately forty-five degrees south from the parties' property lines under what is known as the coterminous method, to wit, method two.

¶ 16. Despite providing general methods for determining riparian boundaries based upon property lines, Wisconsin law does not mandate the use of any particular method in any particular circumstance. *See Borsellino*, 168 Wis. 2d at 617 ("The methods are not wooden requirements."). Instead, case law dictates the proper method is to be determined based upon what is fair and equitable under the circumstances:

> "[T]he dominant rule is that each [riparian owner] must have his due proportion of the line bounding navigability and a course of access to it from the shore exclusive of every other owner, and that all rules for apportionment or division are subject to such modification as may be necessary to accomplish substantially this result."

*See Nosek*, 103 Wis. 2d at 639 (citing *Thomas v. Ashland, Siskiwit & Iron River Logging Ry.*, 122 Wis. 519, 124, 100 N.W. 993 (1904) (first set of brackets in *Nosek*, emphasis omitted).

¶ 17. The trial court concluded that the method for drawing riparian boundaries was "an equitable issue or a matter of law for the [c]ourt to decide." The Manlicks submit that they have a constitutional right to have a jury decide which method to apply. We agree with the trial court that the issue is not an appropriate one for a jury.

¶ 18. To begin, we note that the Manlicks plead their issues in tort, unlike the plaintiffs in *Nosek* and *Borsellino* who each sought declaratory judgment relief. *See Nosek*, 103 Wis. 2d 633; *Borsellino*, 168 Wis. 2d 611. Thus, those courts never had to address the issue of *who* should decide the parties' riparian boundaries. The ultimate issue for the jury on each of the Manlicks' tort claims depended on the definition of the boundaries of the Manlicks' "property." The Manlicks and Loppnows did not dispute the facts as to the coordinates of the shoreline or the actual placement of the piers. The sole issue was the fairness of one method of determining the riparian rights over the other.

¶ 19. Second, case law indicates that determining which method to apply is a discretionary decision to be determined based upon principles of fairness. *See Borsellino*, 168 Wis. 2d at 614 (reviewing the circuit court's application of the extended-lot-line method for an erroneous exercise of discretion); *see also Nosek*, 103 Wis. 2d at 639–40 (requiring the riparian boundaries to be drawn in such a manner as to provide each landowner with exclusive access to navigable water from the shore). Issues regarding fairness are founded in equity, *see* BLACK'S LAW DICTIONARY 579 (8th ed. 2004) (defining "equity" as "[t]he body of principles constituting what is fair and right"), and "[i]t is well settled that the right to a jury trial does not extend to equitable actions," *Norwest Bank Wisconsin Eau Claire, N.A. v. Plourde*, 185 Wis. 2d 377, 386, 518 N.W.2d 265 (Ct. App. 1994).[4]

---

[4] We need not address the Manlicks' assertion that the trial court's ruling is in error because it conflicts with the jury's verdict, because even if we accept, without deciding, that the two conflict, a jury's verdict regarding an action in equity is merely advisory. *See Schneider v. Fromm Labs., Inc.*, 262 Wis. 21, 24, 53 N.W.2d 737 (1952).

¶ 20. Third, issues regarding which legal standard to apply are legal questions properly submitted to a court. *See DeChant v. Monarch Life Ins. Co.*, 204 Wis. 2d 137, 145, 554 N.W.2d 225 (Ct. App. 1996). Juries should decide only factual issues, not legal issues. *See id.* Here, the parties debate which legal standard should be applied to determine the parties' riparian boundaries. While answering the question requires review of some facts to determine what is equitable, the underlying question is a legal one historically left to the courts to decide. *See id.*

¶ 21. Fourth, the Manlicks have not cited to a single case in which a jury determined which method to apply. *See Nosek*, 103 Wis. 2d 633; *Borsellino*, 168 Wis. 2d 611; *Lopardo v. Fleming Cos., Inc.*, 97 F.3d 921 (7th Cir. 1996); *Rondesvedt v. Running*, 19 Wis. 2d 614, 121 N.W.2d 1 (1963). The parties fail to cite to any case, and we could not uncover any authority to support the Manlicks' assertion that the question is properly directed to a jury.

¶ 22. To the extent that the Manlicks assert on appeal that their damages claim, to wit, their misrepresentation claim, should have gone to the jury, we conclude that the trial court correctly determined that the Manlicks could not prove that claim as a matter of law because the Manlicks were not deceived by the Loppnows' misrepresentations. *See* Wis JI-Civil 2419 (requiring, among other things, that a plaintiff demonstrate that he or she "was deceived by the representations"). Gilbert Loppnow admitted at trial that he falsely told the Manlicks before the parties began litigating that the DNR and a judge told him where the parties could legally place their piers and shore sta-

tions. However, there is no evidence that the Manlicks moved their pier or shore station or otherwise took any action based on Gilbert Loppnow's misrepresentations. *See id.* Consequently, the court did not err in dismissing the claim before it was submitted to the jury.

¶ 23. Having determined that the trial court properly removed the question from the jury, we turn to whether the trial court properly exercised its discretion in concluding that the coterminous method was the most equitable method by which to define the parties' riparian rights. *See Borsellino*, 168 Wis. 2d at 614 (reviewing the trial court's application of the extended-lot-line method for an erroneous exercise of discretion). A trial court erroneously exercises its discretion if it fails "to exhibit a reasoned, illuminative mental process with which to logically connect its decision, findings and conclusions." *Steinke v. Steinke*, 126 Wis. 2d 372, 388–89, 376 N.W.2d 839 (1985). The court must not stop at reciting its findings and conclusions; an exercise of discretion must set forth a discussion of factors relied upon in reaching a conclusion. *Id.* at 389. The trial court properly exercised its discretion here.

¶ 24. Following the close of evidence, in response to the Loppnows' motion to dismiss, the trial court concluded that the coterminous method suggested by the Loppnows was the most equitable method by which to determine the parties' riparian rights. In making its decision, the trial court considered "the historical use of the various lots, the layout of the land, the layout of the riparian areas that historically have been in place," the experts' testimony, and a DNR handout on pier placement. After reviewing that evidence, the trial court concluded that considering "the curves that are involved, [that is,] the shape of the shore line, the best

approach to maintain fairness among all property own-
ers, including the two that are involved in this case, is
the coterminous method." The trial court's decision was
thoughtful and well reasoned and is not clearly errone-
ous.

¶ 25. We also disagree with the Manlicks' conten-
tion that the trial court's decision erroneously implied
that expert testimony was *necessary* to determine
which method to apply. The Manlicks cite to the follow-
ing excerpt from the trial court's decision in support of
their assertion:

> I take into account that there's testimony, expert
> testimony, as to the most effective way to proceed in
> using the right angle or the coterminous method. It's a
> reasonable approach . . . .
>
> . . . .
>
> I conclude[] that [Mr. Keith Kindred's] approach is
> reasonable, that there has not been other expert testi-
> mony presented as to what other approaches may be
> reasonable.

We fail to see how this statement by the trial court
indicates that it believed expert testimony was *re-
quired*. Rather, the trial court merely stated that it
considered all of the evidence admitted, including the
testimony of Keith Kindred, a registered land surveyor.
Kindred testified that he applied the coterminous
method when surveying the Loppnows' riparian rights
because, based upon the DNR's pier placement hand-
out, that was the proper method to apply when dealing
with a curved shoreline. The court did not err in
considering that testimony, particularly when there was
no expert testimony contradicting Kindred's conclu-

sion. However, that the trial court considered Kindred's testimony does not mean that the court found the testimony to be required.

■■ ■■

¶ 26.   Finally, we reject the Manlicks' argument that the trial court erred in rendering its decision because its application of the coterminous method jeopardizes the rights of other landowners on the lake who were not party to the action. In support of its contention, the Manlicks cite to *Nosek*, in which we held that "a court can order a pier to be placed in such a position that it goes to the most direct point of navigable water *if the riparian rights of the public or of other owners would not thereby be jeopardized." See id.*, 103 Wis. 2d at 643 (emphasis added). Here, the court did not order the placement of a pier. Instead, the court merely delineated the lines of the parties' riparian areas. While there is evidence in the record that demonstrates that the court's ruling *may* cause other riparian owners along the lake to reconsider their riparian areas, the Manlicks have not cited to case law convincing us that we should depart from the general rule that "nonparties to an action are not bound to a judgment therein based on the principle that everyone should have their day in court." *See Pasko v. City of Milwaukee*, 2002 WI 33, ¶ 22, 252 Wis. 2d 1, 643 N.W.2d 72.

*By the Court.*—Judgment affirmed.