COURT OF APPEALS
DECISION
DATED AND FILED

November 26, 2019

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2018AP2227**

Cir. Ct. No.  **2018CV2**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

MICHAEL G. DESOMBRE AND JIYOUNG C. DESOMBRE,

   PLAINTIFFS-RESPONDENTS,

 V.

JAMES I. BOLDEBUCK AND CHARITY A. BOLDEBUCK,

   DEFENDANTS-APPELLANTS.

APPEAL from a judgment of the circuit court for Vilas County: NEAL A. NIELSEN III, Judge.  *Reversed and cause remanded for further proceedings*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. This case concerns a dispute regarding the ownership of a pier and a "wet boathouse"—that is, a boathouse constructed beyond the ordinary high water mark (OHWM) of a navigable waterway.[1] Michael and Jiyoung DeSombre sued their neighbors, James and Charity Boldebuck, seeking a declaration that the DeSombres own a permanent pier and wet boathouse extending into Otter Lake in Vilas County, as well as a declaration that the pier and wet boathouse do not interfere with the Boldebucks' riparian rights. The circuit court granted summary judgment in favor of the DeSombres on both of their claims.

¶2 We conclude the circuit court erred by granting the DeSombres summary judgment because they failed to make a prima facie showing that the pier and wet boathouse are not located at least partially within the Boldebucks' riparian zone. At the very least, there are disputed issues of material fact regarding the location of the pier and wet boathouse in relation to the parties' respective riparian zones. We therefore reverse the court's grant of summary judgment in favor of the DeSombres and remand for further proceedings on their claims.[2]

---

[1] *See **Oneida Cty. v. Converse**, 180 Wis. 2d 120, 122 n.3, 508 N.W.2d 416 (1993).

[2] Given our determination that the circuit court erred by granting the DeSombres summary judgment, we reject the DeSombres' assertion that the Boldebucks' appeal is frivolous. We therefore deny the DeSombres' motion for an award of attorney fees and costs under WIS. STAT. RULE 809.25(3) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

**BACKGROUND**

¶3      The DeSombres and the Boldebucks own neighboring properties on Otter Lake in Vilas County.  The western boundary line of the DeSombres' property is the eastern boundary line of the Boldebucks' property.  Both properties are part of Fred Morey's Subdivision, the plat for which was recorded in 1910.

¶4      Prior to 2004, both the Boldebucks' property—Lot 29—and the DeSombres' property—Lot 30—were owned by Jocelyn Blair.  On October 11, 2004, Blair executed a warranty deed conveying Lot 30 to Jerome and Patricia Connery.  Although identified in the deed as Lot 30, the property was described using a metes and bounds legal description.  Below the legal description, the deed contained the notation: "Including the right to continue to use and maintain the existing boat house and pier located near the Northwest corner of this parcel."

¶5      Just over two weeks later, on October 29, 2004, Blair executed a warranty deed conveying Lot 29 to Jay Brentlinger.  Again, although the deed identified the property as Lot 29, it was described using a metes and bounds legal description.  Below the legal description, the deed stated: "Subject to the right of the grantor, their heirs and assigns to continue to use and maintain the existing boat house and pier located near the Northeast corner of this parcel, said grantor owning adjoining lands to the East of this parcel."[3]

---

[3] The inclusion of this language in Brentlinger's deed is perplexing, as Blair no longer owned Lot 30—the adjoining property to the east of Lot 29—when she conveyed Lot 29 to Brentlinger.  Rather, as noted above, she had conveyed Lot 30 to the Connerys just over two weeks earlier.

¶6    On November 14, 2007, the Connerys sold Lot 30 to the DeSombres. Again, the deed contained a metes and bounds legal description and included the notation: "Including the right to continue to use and maintain the existing boat house and pier located near the Northwest corner of this parcel." The Boldebucks purchased Lot 29 on June 12, 2012. Their deed included a metes and bounds legal description and did not contain any reference to the pier or wet boathouse. It is undisputed that according to the metes and bounds legal descriptions contained in the parties' deeds, which were taken from a survey completed in 2003, the pier and wet boathouse extend into Otter Lake from the DeSombres' property.

¶7    At some point after the Boldebucks purchased their property, they began using the pier and wet boathouse when the DeSombres were absent, without the DeSombres' consent. On June 25, 2016, the Boldebucks wrote to the DeSombres asserting that they had a right to use the pier and wet boathouse because those structures were located "substantially within [the Boldebucks'] riparian zone." The letter conceded that the DeSombres' deed granted them a "permissive right" to use and maintain the pier and boathouse, but it stated that right was "concurrent with [the Boldebucks'] rights of ownership and use."

¶8    The DeSombres subsequently commenced this lawsuit, which asserted two claims against the Boldebucks. First, the DeSombres asked the circuit court to declare that they were the sole owners of the pier and wet boathouse, and that the Boldebucks did not have any ownership interest in those structures. Second, they sought a declaration that the pier and boathouse did not interfere with the Boldebucks' riparian rights.

¶9    The DeSombres ultimately moved for summary judgment, which the circuit court granted.  The court summarized its reasoning as follows:

> The boathouse and pier are attached to the DeSombre Parcel according to the legal descriptions and surveys under which both parties took title.  The DeSombres were marketed a property containing a boathouse, specifically contracted for it, and took title based on verification by survey and legal description that the boathouse was theirs. They have insured the boathouse for casualty and liability as part of their homeowner's policy since purchase, they have been assessed and have paid taxes on the structure as part of the improvements to their parcel since purchase. They have spent money and been responsible for maintenance of the pier and boathouse since purchase. Real or personal, and however situated, the boathouse and pier are the exclusive property of the DeSombres.  The Boldebucks have no basis to claim ownership of the boathouse and pier, and no right to use based on any theory they have advanced.  Any encroachment of the structure into the Boldebuck riparian zone under the facts of this case does not constitute an actionable violation of riparian rights.  The situation was open and obvious to the Boldebucks at the time of their purchase, a purchase they elected to make despite the existence of the boathouse and the pier, and without any basis to believe at the date of purchase that they had any legal or equitable claim to its ownership or use.

The Boldebucks now appeal the court's summary judgment ruling.

## DISCUSSION

### I.  Standard of review

¶10    We independently review a grant of summary judgment, using the same methodology as the circuit court.  *Hardy v. Hoefferle*, 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843.  "Under that methodology, the court, trial or appellate, first examines the pleadings to determine whether claims have been stated and a material factual issue is presented."  *Preloznik v. City of Madison*,

113 Wis. 2d 112, 116, 334 N.W.2d 580 (Ct. App. 1983). If so, we then examine the moving party's submissions to determine whether they establish a prima facie case for summary judgment. *Id.* If the moving party has made a prima facie showing, we examine the opposing party's affidavits to determine whether a genuine issue exists as to any material fact. *Id.*

¶11 Ultimately, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). "Summary judgment is a drastic remedy; therefore, the moving party must clearly be entitled to judgment as a matter of law." *CED Props., LLC v. City of Oshkosh*, 2018 WI 24, ¶19, 380 Wis. 2d 399, 909 N.W.2d 136 (citation omitted). Accordingly, when reviewing a grant of summary judgment, we view the facts in the light most favorable to the nonmoving party, and we resolve any doubts as to the existence of a genuine issue of material fact against the moving party. *Id.*

## II. Riparian rights

¶12 The DeSombres moved for summary judgment on their claims for a declaration that: (1) they own the pier and wet boathouse; and (2) the pier and wet boathouse do not interfere with the Boldebucks' riparian rights. It is undisputed that both the DeSombres and the Boldebucks are riparian owners of property on Otter Lake. "Riparian owners are those who have title to the ownership of land on the bank of a body of water." *ABKA Ltd. P'ship v. DNR*, 2002 WI 106, ¶57, 255 Wis. 2d 486, 648 N.W.2d 854. A riparian owner is accorded certain rights based upon his or her ownership of shoreline property. *Id.* As relevant to this case,

those rights include the right to "construct a pier or similar structure in aid of navigation." ***Id.*** In addition, a riparian owner has the exclusive right to use any such pier and may therefore "eject others" who attempt to use it. *See **Anchor Point Condo. Owner's Ass'n v. Fish Tale Props., LLC***, 2008 WI App 133, ¶¶13-14, 313 Wis. 2d 592, 758 N.W.2d 144.

¶13 A property owner's riparian zone is comprised of "the area that extends from riparian land waterward to the line of navigation as determined by a method that establishes riparian zone lines between adjacent riparian owners in a manner that equitably apportions access to the line of navigation." WIS. STAT. § 30.01(5r). The line of navigation, in turn, means "the depth of a navigable water that is the greater of … [t]hree feet, as measured at summer low levels" or "[t]he depth required to operate a boat on the navigable water." Sec. 30.01(3c).

¶14 Wisconsin case law sets forth three general methods for determining the boundaries between neighboring property owners' riparian zones. ***Nosek v. Stryker***, 103 Wis. 2d 633, 635, 309 N.W.2d 868 (Ct. App. 1981). First, "where the course of the shore approximates a straight line and the onshore property division lines are at right angles with the shore, the boundaries are determined by simply extending the onshore property division lines into the lake." ***Id.*** This method is typically referred to as the "extended lot line method." *See **Borsellino v. Kole***, 168 Wis. 2d 611, 614, 484 N.W.2d 564 (Ct. App. 1992). Second, if "the boundary lines on land are not at right angles with the shore but approach the shore at obtuse or acute angles ... the division lines should be drawn in a straight line at a right angle to the shoreline without respect to the onshore boundaries." *Nosek*, 103 Wis. 2d at 636. Our case law refers to this method as both the "right angle method" and the "coterminous method." *See **Borsellino***, 168 Wis. 2d at 614; ***Manlick v. Loppnow***, 2011 WI App 132, ¶15, 337 Wis. 2d 92, 804 N.W.2d

712. Third, "where the shoreline is irregular ... the boundary line should be run in such a way as to divide the total navigable waterfront in proportion to the length of the actual shorelines of each owner taken according to the general trend of the shore." *Nosek*, 103 Wis. 2d at 637.

### III. Application of the summary judgment methodology

¶15 The Boldebucks do not develop any argument that the DeSombres' complaint failed to state a claim upon which relief could be granted. We therefore proceed to the second and third steps of the summary judgment analysis and consider: (1) whether the DeSombres made a prima facie case for summary judgment on each of their claims; and (2) whether genuine issues of material fact precluded the circuit court from granting the DeSombres summary judgment.

### A. Prima facie case for summary judgment

¶16 The Boldebucks first argue that the DeSombres failed to make a prima facie case for summary judgment on their claim for ownership of the pier and wet boathouse. That claim sought a declaration of interest in real property, pursuant to WIS. STAT. § 841.01(1). The Boldebucks contend that the DeSombres "failed to present a prima facie case that the boathouse and pier are real property," and that, as a result, they are not entitled to relief under that statute.

¶17 The term "real property" means "[l]and and anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land." *Property*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also **Stuart v. Weisflog's Showroom Gallery, Inc.***, 2008 WI 86, ¶58, 311 Wis. 2d 492, 753 N.W.2d 448. Here, it is undisputed that the pier and wet boathouse are "attached to" the bed of Otter Lake. It is further undisputed that the pier and

boathouse are permanent, rather than temporary or removable, structures. Nonetheless, the Boldebucks argue that even permanent structures that are "attached to" the bed of a navigable waterway cannot be owned as real property by private individuals because title to the underlying land is held by the State, pursuant to the public trust doctrine.

¶18 We reject this argument because the Boldebucks cite no legal authority supporting their assertion that the public ownership of a lakebed means that any structures affixed to it cannot qualify as real property. "Arguments unsupported by references to legal authority will not be considered." *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶19 Furthermore, in support of their summary judgment motion, the DeSombres offered the affidavit of Michael Muelver, the tax assessor for the town where the parties' properties are located. Muelver averred that the DeSombres had paid real estate taxes on the wet boathouse since at least 2006, and he submitted documentation supporting that averment. For purposes of Wisconsin's tax statutes, the term "real property" is defined to include "not only the land itself but all buildings and improvements thereon, and all fixtures and rights and privileges appertaining thereto." WIS. STAT. § 70.03(1). "A benefit is appurtenant if the right to enjoy that benefit is tied to the ownership of a particular parcel of land." *Nature Conservancy of Wis., Inc. v. Altnau*, 2008 WI App 115, ¶7, 313 Wis. 2d 382, 756 N.W.2d 641. The rights to place and use structures in aid of navigation on the bed of a navigable lake are appurtenant to the ownership of riparian property. *See ABKA Ltd. P'ship*, 255 Wis. 2d 486, ¶57; *Anchor Point*, 313 Wis. 2d 592, ¶¶13-14. We therefore conclude that such structures may be owned by a private individual as real property, even though the underlying lakebed is owned by the State.

¶20    Nevertheless, we conclude for another reason that the DeSombres failed to make a prima facie case for summary judgment on both of their claims. Specifically, the DeSombres failed to introduce any evidence on summary judgment showing the location of the pier and wet boathouse in relation to the parties' respective riparian zones. That determination appears to be material both to whether the DeSombres own the pier and wet boathouse and to whether those structures interfere with the Boldebucks' riparian rights.[4]

¶21    As noted above, a party's riparian zone extends from the shoreline waterward to the line of navigation, and the boundaries between neighboring owners' riparian zones are typically determined using one of the three methods set forth in our case law. *See* WIS. STAT. § 30.01(5r); *Nosek*, 103 Wis. 2d at 635. The DeSombres submitted several survey maps in support of their summary judgment motion. Each of those maps shows the pier (to which the wet boathouse is attached) extending into Otter Lake from the corner of the DeSombres' property closest to the Boldebucks' property line. However, none of the maps that the DeSombres submitted on summary judgment purport to show the location of either the line of navigation or the boundary between the parties' riparian zones. Thus, those maps do not provide any evidence as to whether the pier and wet boathouse lie completely within the DeSombres' riparian zone, whether they

---

[4] The DeSombres do not develop any argument explaining why they should be deemed to own any portions of the pier and wet boathouse that are located within the Boldebucks' riparian zone. Moreover, they do not explain why the presence of the pier and wet boathouse within the Boldebucks' riparian zone would not interfere with the Boldebucks' riparian rights as a matter of law, given that the Boldebucks have the exclusive rights to place and use piers and other structures in aid of navigation in their own riparian zone. *See ABKA Ltd. P'ship v. DNR*, 2002 WI 106, ¶57, 255 Wis. 2d 486, 648 N.W.2d 854; *Anchor Point Condo. Owner's Ass'n v. Fish Tale Props., LLC*, 2008 WI App 133, ¶¶13-14, 313 Wis. 2d 592, 758 N.W.2d 144. This opinion should not be read, however, to foreclose the DeSombres from raising arguments regarding these legal issues on remand.

extend partially into the Boldebucks' riparian zone, or to what extent the structures extend beyond the line of navigation and therefore lie outside both the DeSombres' and the Boldebucks' riparian zones.

¶22    The DeSombres also submitted an affidavit of surveyor Thomas Boettcher in support of their summary judgment motion.  However, neither Boettcher's affidavit nor its attachments provide any evidence as to the location of the pier and wet boathouse in relation to the parties' respective riparian zones.

¶23    The DeSombres also submitted an affidavit of Brian Hug, who was employed as a caretaker for their property.  Hug averred that Otter Lake is approximately three feet deep at the two corners of the wet boathouse closest to the shore and that "[i]n the area of the common boundary between the DeSombre and Boldebuck properties the depth of the water reaches 3 feet at 30 feet from the ordinary high water mark."  Hug's affidavit therefore provides some evidence regarding the location of the line of navigation.  Notably, however, the line of navigation is located at "*the greater of* … [t]hree feet, as measured at summer low levels" or "[t]he depth required to operate a boat on the navigable water."  WIS. STAT. § 30.01(3c) (emphasis added).  The DeSombres did not introduce any evidence as to whether Hug's depth measurements were taken at summer low levels, nor did they introduce evidence regarding the depth of water required to operate a boat on Otter Lake.

¶24    In its summary judgment decision, the circuit court relied on an "Eagle Landmark Survey submitted by [the DeSombres]" as showing the boundary between the parties' respective riparian zones.  However, the Eagle Landmark survey was not submitted by affidavit in support of the DeSombres' summary judgment motion.  Instead, it was submitted as an

11

attachment to the DeSombres' complaint. "On summary judgment, the allegations in the complaint are not evidence." *Oddsen v. Henry*, 2016 WI App 30, ¶26, 368 Wis. 2d 318, 878 N.W.2d 720. We therefore agree with the Boldebucks that the court could not rely on the Eagle Landmark survey when determining whether the DeSombres had established a prima facie case for summary judgment.[5]

¶25    As the foregoing summary shows, the DeSombres failed to submit sufficient evidence on summary judgment showing the location of the pier and wet boathouse in relation to the parties' respective riparian zones, including to the line of navigation. Accordingly, the DeSombres failed to establish a prima facie case for summary judgment on either of their claims, and the circuit court erred by granting their summary judgment motion.

### B. Existence of genuine issues of material fact

¶26    Moving on to the third step of the summary judgment analysis, we conclude that even if the DeSombres did establish a prima facie case for summary judgment, the evidentiary materials submitted by the Boldebucks were sufficient to raise a genuine issue of material fact as to the location of the pier and wet boathouse in relation to the parties' respective riparian zones. In opposition to the

---

[5] The situation would be different if the DeSombres' complaint had contained an allegation regarding the validity of the Eagle Landmark survey and if the Boldebucks had admitted that allegation in their answer. However, that is not the case here, as the Boldebucks' answer expressly denied the only allegation in the DeSombres' complaint that pertained to the Eagle Landmark survey.

In addition, as the circuit court acknowledged in its summary judgment decision, even the Eagle Landmark survey shows a significant portion of the pier extending over the purported boundary between the parties' riparian zones onto the lakebed on the Boldebucks' side of the line. However, it is unclear from the Eagle Landmark survey whether that portion of the pier is past the line of navigation and therefore outside the Boldebucks' riparian zone.

DeSombres' summary judgment motion, the Boldebucks submitted an affidavit of surveyor Gregory Maines, attached to which was a survey map that Maines had prepared in June 2018. On that survey map, Maines depicted the location of the boundary line between the parties' riparian zones using both the extended lot line method and the coterminous method.[6]

¶27 Using the boundary line created by extending the lot line established by the parties' legal descriptions, the Maines survey shows that nearly the entire pier and boathouse are on the Boldebucks' side of the line. Using the boundary line established by the coterminous method, a small portion of the boathouse and a substantial portion of the pier are on the Boldebucks' side of the line.

¶28 The Maines survey does not purport to show the location of the line of navigation. However, it does include a line labeled "30' Offset From OHWM."

---

[6] The Maines survey actually depicts two sets of boundary lines between the parties' riparian zones. One set assumes that the boundary between the parties' lots is that established by the legal descriptions in their deeds, which were based on a 2003 survey. Another set of boundary lines assumes that the boundary between the parties' lots is in a different location that was established by the 1910 subdivision plat.

Maines averred that the 2003 survey was inconsistent with the 1910 subdivision plat and was therefore "incorrect." According to Maines, if the measurements from the 1910 subdivision plat were used to determine the boundary line between the parties' lots, the pier and boathouse would extend into Otter Lake from the Boldebucks' property, rather than from the DeSombres' property.

The Boldebucks contend that Maines' affidavit creates a genuine issue of material fact because if the boundary line between the parties' lots is actually located at the site established by the 1910 subdivision plat, the pier and wet boathouse are attached to the Boldebucks' property and are located entirely within the Boldebucks' riparian zone. We do not find this argument persuasive. Regardless of where the boundary line may have been located in 1910, Blair—the common grantor to both the DeSombres' and the Boldebucks' predecessors in title—was free to subdivide her property in a manner that was inconsistent with the 1910 plat. Accordingly, the legal descriptions in the DeSombres' and the Boldebucks' deeds—which are consistent with the 2003 survey—control the location of the common boundary between their lots. Any discrepancy between the 1910 plat and the 2003 survey is therefore immaterial for purposes of this appeal.

Assuming that line is consistent with the line of navigation,[7] the Maines survey shows that portions of the pier and boathouse are located within the Boldebucks' riparian zone, regardless of whether the extended lot line method or the coterminous method is used to determine the boundary between the parties' riparian zones. Furthermore, Maines expressly averred in his affidavit that using either method, portions of the pier and wet boathouse are within the Boldebucks' riparian zone.

¶29 Maines' affidavit and survey therefore show that there is a factual dispute as to whether the pier and wet boathouse are located partially within the Boldebucks' riparian zone. This dispute appears to be material to determining both the ownership of the pier and wet boathouse and whether those structures interfere with the Boldebucks' riparian rights. *See supra* n.4. As a result, the circuit court erred by granting the DeSombres summary judgment on both of the claims alleged in their complaint. We therefore reverse the court's grant of summary judgment in favor of the DeSombres and remand for further proceedings on their claims.[8]

---

[7] As noted above, Hug averred that in the vicinity of the boundary between the parties' properties, Otter Lake reaches a depth of three feet "at 30 feet from the ordinary high water mark."

[8] The Boldebucks raise several additional arguments in their appellate briefs. Given our conclusion that the circuit court erred by granting the DeSombres summary judgment for the reasons explained above, we need not address these additional issues. *See **Patrick Fur Farm, Inc. v. United Vaccines, Inc.***, 2005 WI App 190, ¶8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707 (court of appeals decides cases on the narrowest possible grounds).

*By the Court.*—Judgment reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.